(No. 11947.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. ERNEST HELM, Plaintiff in Error.

*Opinion filed April 17, 1918.*

1. CRIMINAL LAW—*jury must determine value of evidence tending to identify defendant by his voice.* A witness may testify to his knowledge acquired through any of his senses, but the question of fact as to his identification of the defendant in a criminal case by the sound of his voice should be left to the jury, uninfluenced by any intimation by the court as to the weight of the evidence. (*Ogden* v. *People,* 134 Ill. 599, explained.)

2. SAME—*when evidence as to defendant drinking beer is admissible.* In a prosecution for stealing chickens, where witnesses have testified that when two men in a buggy passed along the road, singing, on the night of the offense, they recognized the defendant by his voice, evidence that the defendant had been drinking beer an hour or two before that time is admissible.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. WILLIAM B. WRIGHT, Judge, presiding.

WILLIAM H. GREEN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, SAMUEL N. FINN, State's Attorney, and FLOYD E. BRITTON, (E. B. VANDERVORT, and W. G. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Ernest Helm has sued out a writ of error to review the judgment of the circuit court of Marion county by which he was convicted of burglary.

The crime was committed on the night of July 27, 1916, and the controversy is over the identity of Helm with the burglar. The crime consisted in stealing some chickens, the property of Birdie and Isabella Storment, from the chicken house of Isabella Storment. There was evidence which jus-

tified the jury in finding that the chickens were stolen, as charged in the indictment, shortly after midnight and were carried off by two men in a buggy drawn by two horses, the team and buggy being the property of Jesse Hickey, who was indicted jointly with Helm. One of the horses was shod all around, the other on the fore-feet, only. One of the wheels of the buggy was loose on the axle and was also bound with wire and made a wavering track which was easily distinguishable. The buggy was followed very early the next morning and traced east and south along the highway several miles to the home of Hickey, who was arrested there. Helm was a neighbor of Hickey and was not arrested until a day or two later. There was evidence that the team was hitched to the buggy at Hickey's barn about ten o'clock at night by two men, who then drove west and north along the highway, singing as they went. No one saw the persons in the buggy clearly enough to recognize them, and the only evidence directly connecting Helm with the case is the testimony of a neighbor who saw and heard two men with lanterns near Hickey's stable catching his horses and hitching them to his buggy and who recognized their voices as those of Helm and Hickey, and the testimony of several other witnesses who lived on the road between the Hickey house and the Storment place and who testified to hearing a buggy pass in the night with the men singing and who recognized Helm's voice. In regard to this testimony the court gave the following instruction to the jury:

"The court instructs the jury, in the language of the Supreme Court, that 'the statements by the witnesses for the prosecution of a fact which they ascertained through the sense of hearing was not the statement of mere matter of opinion but the statement of a conclusion reached directly and primarily from an operation of the sense of hearing. A witness can learn and know facts by and through the exercise of his perceptive faculties.'"

It was error to give this instruction.  Neither party has taken the trouble to cite the case in which the language attributed to the Supreme Court was used, but it will be found in *Ogden* v. *People,* 134 Ill. 599, and was used by the writer of the opinion in that case in discussing the weight of the evidence.  It was appropriate to that discussion but was not intended to lay down a rule of law to be given to a jury for their guidance.  It is no doubt true that knowledge may be acquired through the sense of hearing as well as through the sense of sight or any other of the senses, and a witness may testify to his knowledge acquired through any of the senses.  The language quoted is followed in the opinion by the statement that it was a question of fact for the determination of the jury whether or not the testimony in question sufficiently established the matter of identification.  So it was a question of fact in this case.  It should have been left to the jury to determine, uninfluenced by any intimation by the court as to the weight of the evidence, whether Helm was sufficiently identified by the testimony.  The instruction assumes that the witnesses for the prosecution were stating facts which they had ascertained through the sense of hearing, and informed the jury that such statements were not matters of opinion but were conclusions reached from an operation of the sense of hearing.  The jury might well have understood the instruction as expressing the court's view that the witnesses' conclusion from the sense of hearing was in accordance with the fact as to the identity of Helm.  They would at least have inferred that in the opinion of the court the testimony based upon the sense of hearing should have equal weight with that based upon the sense of sight.  It is not, however, the province of the court to instruct the jury as to the weight of the evidence.  The evidence was conflicting and of such a character that any intimation from the court to the jury as to its weight was necessarily harmful to the defendant.

The prosecution introduced evidence to show that Helm was fishing with several other men on the afternoon before the burglary was committed; that on their return he left the party a short distance from his house about eight or nine o'clock in the evening; that they had a keg of beer and that Helm drank some. It is insisted that this evidence was erroneously admitted and was harmful to the plaintiff in error. Witnesses testified that Helm was singing in the buggy as it passed over the road an hour or two after he left the fishing party, and the evidence that he had been drinking beer was admissible as bearing upon his action in this respect.

Charles Curtis testified that previous to the first trial of the case Helm asked him to swear that Ed Atterberry and Elzie Henson had driven Hickey's team to Curtis' house on the night of the burglary, but that the fact was not so and he refused to testify that it was. Henson testified to Helm's endeavoring to induce him to testify to the same thing and said that it was not true. Ed Atterberry testified that he and Henson did have Hickey's team out on the night of July 27, and Hickey and Helm both testified that both Atterberry and Henson informed them that they had the team out on the night of the alleged burglary and drove it to Charles Curtis' and that Curtis admitted it but did not remember the exact date. Thereupon, in rebuttal, the People introduced in evidence an affidavit made by Hickey and Helm for a continuance of the cause before the first trial on account of the absence of Atterberry, Curtis and Henson, in which they set out that they expected to prove by these witnesses the fact that Atterberry and Henson had driven Hickey's team on the night of the burglary to Curtis' house, arriving about ten o'clock and staying there until two o'clock, when they went away. The plaintiff in error objected to the admission of the affidavit, and it was not competent and should not have been admitted for it was not inconsistent with his testimony, but it did

no harm, for he testified to substantially the same thing on the trial.

The People also introduced evidence of some statements of Hickey at variance with his testimony, made out of the presence of the plaintiff in error. A number of them were not objected to, but some of them were objected to and should not have been admitted.

For the error in the instruction given, the judgment must be reversed and the cause remanded for another trial.

*Reversed and remanded.*