(No. 15192.—Reversed and remanded.)
FRED R. BELL, Appellant, vs. H. R. McDONALD, Appellee.

*Opinion filed April 18, 1923—Rehearing denied June 8, 1923.*

1. PLEADING—*replication by way of confession and avoidance admits allegations of pleas.* A replication which does not deny the allegations of the defendant's pleas but contains matter of confession and avoidance admits the truth of the allegations.

2. BILLS AND NOTES—*when burden is on holder to show that he holds notes without notice of maker's defense.* In the absence of statute the holder of a promissory note obtained from the maker by fraud has the burden of showing that he obtained it in good faith for value without notice of the fraud, and where notes were given merely as collateral and their negotiation by the payee was a fraud upon the maker, the holder to whom the notes were negotiated has the burden of showing that his purchase was in good faith and without notice of any defense of the maker.

3. SAME—*when title of person negotiating an instrument is defective under section 55 of Negotiable Instrument act.* Where a principal holds promissory notes of its agent merely as collateral and to be surrendered at maturity upon the payment by the agent of amounts collected by him in the sale of the principal's property, the act of the principal in putting the notes in circulation as valid promissory notes before maturity is a breach of faith such as amounts to fraud and renders the title of the principal defective within the meaning of section 55 of the Negotiable Instrument act.

4. SAME—*when evidence is admissible to show delivery of instrument was upon condition.* While it is a general rule that an instrument absolute on its face cannot be shown by parol to be conditional, evidence that the instrument was not intended to take effect as a valid obligation until the occurrence of some future contingency is admissible between the original parties and between them and those taking with notice, as such evidence does not contradict the terms of the writing or vary its legal import but tends to show that it was never delivered as a present contract.

5. SAME—*an instrument is inoperative until delivery—presumption.* An instrument is inoperative until its delivery but unexplained possession is presumptive evidence of delivery, and under such circumstances no alteration of the terms of the writing can be shown except that the delivery was upon condition.

6. EVIDENCE—*evidence that person was identified by voice is admissible.* Though identification by sight is more usual than by

hearing and perhaps more satisfactory and less liable to error, the latter method cannot be ignored as incompetent, and a witness may testify that he knew he was talking on the telephone with a particular individual because he knew his voice, the weight of such testimony being a question for the jury.

7. Same—*when evidence of conduct is admissible to prove an admission.* Admissions may be implied from conduct as well as expressed by words and may be implied by mere silence, but the circumstances must be such as afford an opportunity to act or speak and as properly and naturally call for such action or reply from persons similarly situated.

8. Same—*when plaintiff in suit on note may prove admission by conduct of defendant.* Where the plaintiff in a suit on promissory notes claims that he is a holder in good faith and for value, and the defendant maker testifies that before the plaintiff acquired the notes he told him over the telephone that they were given to the payee as collateral and were not to be negotiated, the plaintiff should be permitted to testify that after he had purchased the notes from the payee he had a talk with the defendant about paying them at maturity and that the defendant said nothing at that time about the conversation in which he claims to have told the plaintiff the notes were not negotiable.

9. Trial—*argument should be limited to competent evidence.* Argument of counsel repeatedly referring to facts wholly irrelevant to the issue, notwithstanding the court's admonition to confine the argument to the evidence which was admitted, constitutes prejudicial error where the issue is closely contested.

10. Appeals and errors—*when judgment will be reversed on second appeal.* An appellate court will not continue indefinitely to re-examine the facts and reverse judgments where the same verdict has been rendered by successive juries, but where errors have occurred in the admission or rejection of evidence of such a character as to have deprived the party of the opportunity to present his case fairly to the jury upon the legitimate evidence the judgment will again be reversed.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. Walter Brewer, Judge, presiding.

Gunn, Penwell & Lindley, and M. F. Keegan, for appellant.

Acton, Acton & Snyder, and John M. Boyle, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

Fred R. Bell, as indorsee of two promissory notes executed by H. R. McDonald, brought an action of assumpsit against the latter in the circuit court of Vermilion county. There was a jury trial, resulting in a verdict and judgment for the defendant. The judgment was affirmed by the Appellate Court and the plaintiff was allowed an appeal to this court.

The notes, for $1400 each, dated May 27, 1915, were payable five and six months after date, respectively, to the Pioneer Stock Powder Company and were indorsed by that company by A. G. Litson, its president, and by A. G. Litson individually. The defendant did not plead the general issue but filed two special pleas, the first averring that the notes were executed without any good or valuable consideration, the second that the consideration has wholly failed. The pleas were the same in substance, each setting out the circumstances attending the execution of the notes. It was averred that the Pioneer Stock Powder Company by its agent called upon the defendant and appointed him agent for the distribution of its powder, and agreed that it would put in agents to sell said powder, and that said agent guaranteed the powder to absolutely cure hog cholera and keep hogs from having it; that the agent said he would order 40,000 pounds of powder, selling price to be seven cents a pound, a total of $2800; that the agent asked the defendant to sign two notes mentioned in the declaration, as collateral, to be held by the company for whatever powder should be sold, and agreed that at the end of five months a representative of the company would come around and collect for the powder and surrender the first note and that a similar transaction would take place at the end of six months, and that the notes were delivered, under the agree-

ment, as collateral and for no other purpose and upon no other consideration whatever; that the company did ship 500 pounds of powder to the defendant and sent no person to act as sub-agent, and that a small amount of the powder was sold by the defendant. The powder was sold by the defendant guaranteeing as aforesaid, but it proved absolutely worthless and not to have the curative effect guaranteed by the company, and the defendant collected no money for the powder and never at any time agreed with the company to pay it for any of the powder except any amounts he might collect for the sale of the same. Replications were filed averring that the plaintiff had no knowledge of any agreement between McDonald and the Pioneer Stock Powder Company or of any warranty or guaranty by the latter or of any want or failure of consideration, and that he was the purchaser for value in good faith before maturity. The trial was upon the issue formed whether the plaintiff was a purchaser for value before maturity and in good faith.

The appellant was cashier of the Bank of Pence, at Pence, Indiana, which is situated near the west line of that State, about five miles east and three miles north of the village of Alvin, in Vermilion county, Illinois. The appellee is a farmer living near Alvin, eight or nine miles southwest of Pence. The appellant testified that he bought the two notes on August 24 or 25, 1915, for $2473.20, from A. G. Litson, president of the Pioneer Stock Powder Company, with no knowledge or notice of any defect in title or of the relations between the appellee and the Pioneer Stock Powder Company. The appellee testified that he had known the appellant probably fifteen years prior to 1915, had talked to him probably once or twice a year and was familiar with his voice; that he had a conversation with him over the telephone about August 10, 1915, and recognized his voice; that the appellant asked him about the notes, and that the appellee told him that both notes were given as collateral

and were not to be sold, and if he bought the notes he would be buying trouble,—that the notes were not to be paid. The appellee told the appellant that the stock powder was no good whatever. The appellee was at home when this conversation occurred, about two miles and a half southeast of Alvin. The telephone is in his house. The appellant called him about noon. The appellee further said that the telephone connection was through Alvin; that the conversation was about the 10th of August. He had never talked to the appellant before over the telephone. He saw the appellant during the month of October, 1915, at the appellant's place of business. The appellee was there with a gentleman named O. O. Hamilton and had a conversation with the appellant, in which the appellant wanted him to agree to pay one of the notes if an extension were given on the other, but the appellee would not do it. The appellant's counsel asked the appellee if it was not a fact that in that conversation he said nothing about this telephone conversation, but the court sustained an objection to the question. The appellant in rebuttal denied having the telephone conversation with the appellee on or about August 10, and testified that he never had a telephone conversation with him about these notes at any time; that the appellee never told him before he purchased the notes that there was a valid defense to them. During the month of August, 1915, the appellant had a telephone in his house on the Cadwallader system and also had one in the Bank of Pence, and had access to no other telephone under his control except these two. Neither he nor the bank had free service to Alvin. He did not call up the appellee for any reason during the month of August. The appellee was at the Bank of Pence during the month of October with Hamilton, who was an officer of the Collison Bank of Alvin. The appellant had a conversation with the appellee at that time at which Hamilton was present. The appellant was asked to state whether or not in that conversation McDon-

ald said anything about a telephone conversation occurring in the month of August, but the appellee's objection to the question was sustained. The appellant also offered to prove by the testimony of Hamilton given at a former trial under a stipulation in regard to it, the conversation between the appellant and the appellee at which Hamilton was present, and that appellee said nothing to the appellant about a previous telephone conversation with him. The appellant introduced the testimony of the manager and superintendent of the Cadwallader Telephone Company and of Mrs. Woody, the telephone operator of that company at Pence in August, 1915, who kept the books and also attended the switch-board, showing that the appellant and the Bank of Pence had toll service to Alvin and did not have free service; that records were kept of conversations of subscribers to Alvin, and records of outside telephone calls from Pence to Alvin were kept; that when an out-of-town call was made Mrs. Woody wrote it down and then made a ticket and a charge; that the original slips which were produced on the trial constituted all the calls made for which a charge was made out of the Pence central office of the Cadwallader system during the month of August, 1915, and from an examination of these slips the appellant did not have a telephone conversation with the appellee on or about August 10. Mrs. Woody had been in charge of the office five years, took care of the telephone both day and night and answered all local calls and long-distance calls.

The appellant contends that the court erred in imposing upon him the burden of proving that he acquired the title to the notes as a holder in due course, as required by section 59 of the Negotiable Instrument law when it is shown that the title of any person who has negotiated the instrument is defective. Section 55 of that law declares that "the title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or

force and fear, or other unlawful means, or for an illegal consideration or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." Section 52 defines a holder in due course as one who has taken the instrument under the condition, among others, that he took it in good faith and for value and with no notice of any infirmity in the instrument or defect in the title of the person negotiating it. In the absence of any statute, a well known rule of commercial law is that the holder of a promissory note obtained from the maker by fraud has the burden of showing that he obtained it in good faith for value without notice of the fraud. (*Wright* v. *Brosseau,* 73 Ill. 381; *Charles* v. *Remick,* 156 id. 327; *Hodson* v. *Eugene Glass Co.* id. 397; *Merchants' Loan and Trust Co.* v. *Welter,* 205 id. 647; *Hide and Leather Bank* v. *Alexander,* 184 id. 416.) The title of the payee was not defective because of anything occurring in connection with the obtaining of the note. The pleas did not aver any fraud, duress, force, fear or other unlawful means by which the instrument was obtained. They merely averred the breach by the payee of its agreement to put in agents to sell the powder and of its warranty that the powder would cure hog cholera and keep hogs from having it; that the notes were signed and delivered only as collateral security for whatever powder should be sold and were to be held by the payee, whose representative would come at the end of five months, collect for the powder sold and surrender the first note, and would come again at the end of six months and surrender the second note, wherefore the notes were given without any good or valuable consideration and the consideration wholly failed. The appellant did not question the legal sufficiency of these pleas by a demurrer or their truth by a denial but replied by way of confession and avoidance and thereby admitted their truth. It is not, however, only for fraud or other unlawful means used in the obtaining of an instrument that section 55 de-

clares the title of a person who negotiates an instrument
defective, but also when he negotiates it in breach of faith
or under such circumstances as amount to a fraud. On
the pleadings it is admitted that the notes were not deliv-
ered as the notes of the maker and were never intended
to take effect as promissory notes, but were to be held by
the payee until maturity and then to be surrendered upon
payment of the amount collected for the stock powder sold
by the appellee, at the rate of seven cents a pound. Under
these circumstances to sell the instruments and put them
in circulation as valid promissory notes of the appellee was
manifestly to negotiate them in breach of faith and under
such circumstances as amount to a fraud and is within sec-
tion 55, which declares that the title of one who so negoti-
ates an instrument is defective.

It is argued on behalf of the appellant that the state-
ment in the pleas that the instruments were delivered only
as collateral security for the stock powder to be sold and
were to be held by the payee and surrendered when the
amount for which the stock powder was sold was collected
by the payee is only an attempt to change and qualify the
unconditional written promises by a contemporaneous parol
agreement, in violation of the general rule that an instru-
ment absolute on its face cannot be shown by parol to be
conditional. While this is a recognized rule of general ap-
plication, yet evidence that the instrument was not intended
to take effect as a valid obligation until the occurrence of
some future contingency is usually held admissible between
the original parties and between them and those taking with
notice. Such evidence, it is held, does not contradict the
terms of the writing or vary its legal import but tends
to show that it was never delivered as a present contract.
The possession of a contract unexplained may be presump-
tive evidence of its delivery, and under such circumstances
no alteration of the terms of the contract could be shown,
but until the delivery the writing is inoperative, and the

delivery upon condition does not make it operative until the condition has been complied with. Evidence of such conditional delivery does not alter or vary the contract.

In *Kilcoin* v. *Ortell,* 302 Ill. 531, it was held that a written contract, though signed, may fail to become binding for want of delivery, and while possession of such a contract by the party seeking to enforce it is presumptive evidence of delivery, such evidence is not conclusive, but testimony as to the circumstances attending the transaction is competent on the question whether the contract was completed and delivered with the intention that it should become presently binding. The opinion quotes the following language used in *Jordan* v. *Davis,* 108 Ill. 336: "Delivery of a written contract is indispensable to its binding effect, and such delivery is not conclusively proved by showing the placing of the paper by the alleged contracting party in the hands of the other. Delivery is a question of intent, and it depends whether the parties at the time meant it to be a delivery to take effect presently."

In *Burke* v. *Dulaney,* 153 U. S. 228, the defendant executed a note for the purchase price of an interest in a group of mines and delivered it to the payee with the understanding that the note should not become operative until after the maker should have examined the property, and if after inspection of the property he should demand the note it should be surrendered to him. The judgment in favor of the plaintiff was reversed. It was held that the evidence of the oral agreement was admissible to show that the contingency never happened and would not be a contradiction of the writing, but would prove that there never was any concluded contract or any complete final delivery of the writing as the promissory note of the maker, payable at all events and according to its terms. To the same effect are *Ware* v. *Allen,* 128 U. S. 590; *Graham* v. *Remmel,* 76 Ark. 140; *Oakland Cemetery Ass'n* v. *Lakins,* 126 Iowa, 121; *McKnight* v. *Parsons,* 136 id. 390; *Westman*

308—22

v. *Krumweide,* 37 Minn. 542; *Linden* v. *Ulrich,* 94 id. 100; *National Revere Bank* v. *Morse,* 163 Mass. 383; *Hodge* v. *Smith,* 130 Wis. 326; *Beach* v. *Nevins,* 162 Fed. 129.

The court was therefore right in instructing the jury that the burden was on the appellant to show that his purchase of the notes was in good faith for value and without notice of any defense to the notes and in refusing to give the appellant's instructions to the contrary.

The appellant insists that it was error to permit the appellee to testify to his alleged telephone conversation with the appellant because the preliminary proof was not sufficient. The appellee testified to his acquaintance with the appellant for fifteen years and familiarity with his voice, to having heard him talk probably once or twice a year, and to recognizing his voice over the telephone. It is common knowledge that an individual may be identified by the voice. Though identification by sight is more usual than by hearing, and perhaps more satisfactory and less liable to error, still the latter method cannot be ignored as incompetent, and a party offering such evidence has a right to have it considered. Its weight is wholly a question for the jury to determine in connection with all the circumstances appearing in the case. (*People* v. *Helm,* 283 Ill. 370.) The question of fact has been argued, but is, of course, not subject to review here.

In October, 1915, a few days before the first note became due, the appellee called upon the appellant in the latter's bank at Pence in company with O. O. Hamilton, an official of the bank at Alvin, and a conversation occurred there about these notes. The appellant wanted the appellee to agree to pay one of them if an extension were given on the other. The appellant offered to prove by himself and Hamilton, and by the appellee on cross-examination, that in that conversation the appellee made no reference to the telephone conversation with the appellant to which he had testified in chief. The court sustained an objection by

the appellee, and the appellant insists that this was error. The conversation was concerning the notes about to fall due and the payment of them by the appellee. It is argued that when the payment of them was demanded by the appellant, the first impulse of the appellee would be to say that he had told the appellant not to buy the notes; that they were not to be sold; that they were only given as collateral and were not to be paid, and that if the appellant bought them he would be buying trouble. The principle is well recognized that admissions may be implied from conduct as well as expressed by words, and may sometimes be presumed from mere silence. The circumstances which will justify the inference of an admission from acquiescence in the conduct or language of another, as stated in Greenleaf on Evidence, (sec. 197,) must be such as not only to afford an opportunity to act or speak, but also to properly and naturally call for such action or reply from men similarly situated. An illustration given of such a situation is, where a tenant personally received notice to quit at a particular day without objection, it was held an admission that his tenancy expired on that day. Here the demand of payment amounted to a claim that the appellant was a purchaser in good faith, and if the appellee knew he was not such purchaser because the appellee himself had given him notice of the invalidity of the notes, would it not ordinarily be expected that the appellee would state that fact? If he did not, the circumstance ought to be taken into consideration in connection with all the evidence bearing upon this question, closely contested upon contradictory evidence as it was, in determining whether the conversation in question took place or not. In *Corcer* v. *Poll,* 41 N. H. 24, suit was brought on a promissory note which the defendant claimed was forged. The trial court refused to admit evidence that the defendant had been notified by the purchaser that the note was due and was shown the note, which he refused to pay but did not deny the signature. The Supreme Court

in reversing the judgment for the refusal to admit this evidence, after the statement of the rule which has been referred to from Greenleaf on Evidence, said: "The facts in evidence here bring the case fairly within the rule. The note and the claim of the bank against him was brought to his notice by the letter of the cashier. He called at the bank and asked to see it, and was told if not paid immediately he would be compelled to pay it. He must have understood the matter fully, and he had opportunity to deny his signature if it was not true. It was an occasion which called upon him to deny his liability and to denounce it as a forgery if he did not sign it, but he did not intimate that the note was not signed by him or that there was anything wrong about it. These facts were evidence of a tacit admission that the note was as the bank claimed it to be: a genuine note signed by him and which he was consequently liable and bound to pay, or a note which he did not choose to deny that he had signed and which he preferred to pay rather than to do so." It was error not to admit the evidence offered by the appellant.

During his argument counsel for the appellee stated to the jury, "You will notice that we called some ten or twelve witnesses to prove the way these notes were obtained," when counsel for the appellant objected and moved to "exclude what witnesses were called for." The court sustained the objection and directed counsel to confine the argument to the witnesses who were on the stand. Counsel then continued: "The jury noticed that the witness McDonald was put upon the stand; we started in to relate by him the transaction,—the way the Pioneer Stock Powder Company had schemed—" when the appellant's counsel again objected to what they expected to prove, and the court stated: "The part of the evidence that is permitted to go to the jury they will consider and that part which is not permitted they will not consider, and counsel will confine himself to the evidence that was admitted." The ap-

pellee's counsel then stated: "Then my friend over there that seems to be trying to keep the jury from having any of the evidence, said he had made an objection to proving these facts." The appellant's counsel objected to the statement that counsel for the plaintiff was trying to keep the evidence from the jury, and the court stated that his objection was sustained and "the jury would be instructed to disregard that." The appellant contends that this argument was improper and was prejudicial to him. The only issue submitted to the jury was the good faith of the appellant. There was evidence on both sides of this issue and it was closely contested. The appellant had nothing to do with the circumstances under which the notes were executed, and evidence about those circumstances was wholly irrelevant to the issue. The evidence as to the defendant's good faith was in a very narrow compass and the argument should have been confined to that evidence. The court sustained the appellant's objections when counsel for the appellee sought to go beyond the issue and argue as to the conduct of other persons, and to do so not on the evidence in the case but on evidence which he was not permitted to introduce. Its purpose and natural effect was to confuse the clear-cut issue of the appellant's good faith with an imaginary issue as to the original transaction and to distract the attention of the jury to the latter issue, which the appellant was charged with evading by trying to keep the jury from hearing the evidence. It was unfair argument, and counsel on the first ruling of the court should have desisted from further argument of that character. He persisted, however, against repeated rulings of the court, and in a close case as this was, such a course was necessarily prejudicial to the appellant.

The appellee calls our attention to the fact that the case has been tried three times, each trial resulting in a verdict for the defendant, which has been approved by the judges who tried the case. The first two of these judgments were

reversed for errors in the admission of evidence. Serious and prejudicial error in the rejection of evidence offered by the appellant occurred in this trial also, and while an appellate court will not continue indefinitely to re-examine the facts and reverse judgments where the same verdict has been rendered by successive juries, yet where errors have occurred in the admission or rejection of evidence of such a character as to have deprived the party of the opportunity to present his case fairly to the jury upon the legitimate evidence in the case the court ought to reverse the judgment.

The judgments of the Appellate Court and the circuit court will be reversed and the cause will be remanded for a new trial.

*Reversed and remanded.*