# T. H. Beard, Defendant in Error, v. H. B. Baxter, Plaintiff in Error.

## Gen. No. 7,994.

1. NEGOTIABLE INSTRUMENTS—*defective title of payee negotiating note in breach of agreement to use same only to show others as basis for credit.* Under Cahill's St. ch. 98, ¶ 36, providing that delivery of negotiable instrument may be shown to be for a special purpose and paragraph 75, thereof, providing that title of negotiator of such instrument is defective for fraud in obtaining or negotiating it, a payee getting the note on agreement to keep it to show others in order to build up his credit, and negotiating same in breach of such agreement, had at all times a defective title.

2. NEGOTIABLE INSTRUMENTS—*when burden upon holder to show himself holder in due course.* Under Cahill's St. ch. 98, ¶ 79, providing in case title of a negotiator is defective burden is on holder of proving he acquired the title in due course, when prima facie it appears that the note was without consideration and was negotiated in violation of agreement, the burden is on holder to show he holds in due course.

3. JUDGMENTS—*showing required to secure opening of judgment by confession.* To open a judgment by confession on a note, the defendant does not have to show matters as to which the burden of proof is upon the holder of the note.

4. JUDGMENTS—*sufficiency of affidavit as basis for reopening judgment by confession.* An affidavit to reopen a judgment by confession on a note, which alleges undue influence and fraud in obtaining the note sued on, establishes prima facie a ground for such reopening.

5. NEGOTIABLE INSTRUMENTS—*sufficiency of affidavit to show holder's title prima facie defective.* Affidavit in support of reopening a judgment by confession on a note, alleging the maker to have been eighty-five years old and to have been brought under complete control of the payee through fraud of the latter, held to show prima facie that holder's title to note was defective.

Error by defendant to the Circuit Court of Sangamon county; the Hon. FRANK W. BURTON and Hon. E. S. SMITH, Judges, presiding. Heard in this court at the April term, 1926. Reversed and remanded with directions. Opinion filed November 6, 1926.

GILLESPIE & GILLESPIE, for plaintiff in error; LOUIS F. GILLESPIE and HUGH J. DOBBS, of counsel.

BROWN, HAY & STEPHENS, for defendant in error.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This cause involves the sufficiency of plaintiff in error's affidavit and showing to open a judgment entered in term time in the circuit court of Sangamon county against him in favor of defendant in error, upon a cognovit under a power of attorney contained in judgment notes and for leave to plead.

Plaintiff in error, immediately upon the entry of said judgment, filed his motion with affidavits, including his own, asking that said judgment be opened and that he have leave to plead in said cause. The affidavits are numerous and some of great length, containing various matters stated upon the information and belief of the affiants. We have carefully read plaintiff in error's affidavit and, eliminating many matters stated only upon information and belief, it is as follows:

"H. B. Baxter, the defendant in this cause, being duly sworn according to law, on oath says that he is eighty-five (85) years of age; that during all of his lifetime he has been a farmer and, incidentally, during the later years of his life he has held a few shares of stock in a small bank at Ashland, Illinois, and has had the nominal position of vice-president of said bank, but has not had any active management or control of said bank, nor any responsibility in relation thereto; that prior to his purchase of interest in oil leases from E. Bryant Crump he had never engaged in buying any stocks or leases or in speculative investments; that his investments theretofore have all been in real estate and his business has been confined to farming; that E. Bryant Crump, about the year 1922, solicited

him to go to Bowling Green, Kentucky, and inspect an oil field, in company with others of his neighbors, with a view to making an investment therein; that he went about that time in company with James Wyatt, Joshua Hubbs, Dr. Lytell, James Thornly and others, all of whom he knew personally, to Bowling Green and was shown the field in which it was desired to sell him an aliquot undivided part and take deeds securing his aliquot parts therefor; that theretofore he had been induced to invest ten thousand ($10,000.00) dollars in what is known as the Rodes lease and had been guaranteed that unless the lease produced sufficient returns to satisfy him within twelve (12) months that the said Crump would pay back to him the said sum; that he was, at that time and subsequently, on the faith of the impression and representations made to him by the said E. Bryant Crump at various times, induced to invest in the aggregate fifty-five thousand ($55,000.00) dollars in said oil leases; that thereafter, in trying to induce affiant to invest in what was known as the Kissler lease he promised affiant that if he would invest in the Kissler lease the sum of ten thousand ($10,000.00) dollars that he would pay him, Baxter, the sum of ten thousand ($10,000.00) dollars on the Rodes lease if he was not satisfied with his investment therein within four (4) months, and that he would at all events pay back the sum of ten thousand ($10,000.00) dollars on the Rodes lease; that affiant made the purchase of the Kissler lease with that understanding and agreement.   *   *   *

"Affiant further says that he had confidence in the integrity and honesty of E. Bryant Crump; that affiant's first acquaintance with the said Crump was when he came to his home, near Ashland, one night; that the said Crump represented to affiant that he was a preacher of the gospel, and that he was known as Dr. E. Bryant Crump; that he had formerly engaged in the ministry at Bloomington, Illinois, and gave to

affiant as references the names of a large number of persons with whom he, affiant, is acquainted, by reputation, and assured affiant that he was there to enable affiant to make large gains and profits in investments in oil leases, and that he wanted him to go to the field and see it.

"Affiant further says that he inquired of him if he had sold any leases in that neighborhood, and thereupon he showed affiant notes for ten thousand ($10,-000.00) dollars each, given by Mr. Wyatt and Mr. Hubbs, one of whom was cashier and the other a director of the bank in Ashland in which affiant held a small amount of stock; that he informed affiant that they had been down and seen the field and were satisfied with the investment; that affiant is not informed as to whether said notes were bona fide or not, but upon the exhibition of said notes affiant made the first purchase of a ten thousand ($10,000.00) dollar interest in the Rodes lease.

"Affiant further says that * * * the said Crump, from time to time, promised affiant that he would make good to him his investments, and continued to correspond with affiant occasionally and to go to see him when he was in this State selling other leases and trying to promote the sale of interests in an asphalt deposit in the State of Kentucky; that the said Crump assured affiant that he would finally make good and reimburse him for all of his leases, every dollar; that on one occasion he sent to affiant three (3) notes, respectively, for four thousand ($4,000.00) dollars, five thousand ($5,000.00) dollars and six thousand ($6,000.00) dollars; that said notes were sent to affiant after he had sent to affiant, upon being pressed for the payment of the aforesaid ten thousand ($10,-000.00) dollars on the Rodes lease, a check for fifteen thousand ($15,000.00) dollars which went to protest; that after said notes were given to affiant he had occasion to use some money and discounted the five

thousand ($5,000.00) dollar note, and the same was sent to Madison, Indiana, for collection; that said Crump declined payment of said note  *  *  *; that affiant went to Bloomington and met the said Crump and the said Lahy and had a talk with the said Crump concerning the object of his call; that the said Crump told affiant he was hard up and needed help to complete an asphalt investment which would put him on his feet; that if he could complete that investment he would be able to and would pay affiant all he owed him within twelve (12) months; that in order to do that he must have a reserve of credit, and asked affiant to aid him by extending the loan of his credit to him for that purpose; that he induced affiant to sign and deliver to him the said notes sued on in this case in the sum of twenty-five thousand ($25,000.00) dollars, upon the express agreement and condition that said notes would not be assigned or transferred, but would be held by him as a collateral reserve, and the security and proceeds thereof as such used only to obtain control of said asphalt deposits, from which he would pay affiant all that he owed him; that his possession of said notes would enable him to induce other friends of his to join in the asphalt enterprise because of the confidence affiant would be showing in the integrity and ability of the said Crump, inasmuch as the said Crump was known to owe affiant the sum of fifty-five thousand ($55,000.00) dollars, which at present he was unable to pay; that the said notes were delivered to the said Crump without any other consideration whatever and merely upon the representations aforesaid and the positive agreements of the said Crump that the said Crump would not put said notes in circulation, but would hold them and use them merely as collateral security for the purpose of making the purchase aforesaid.

"Affiant further says that he did not, when he signed said notes, know that they contained a power of

attorney upon which to confess a judgment;  *  *  *
that the question of whether said notes did or did not
contain such power of attorney was discussed and
affiant was informed by the said Crump that said notes
did not contain any power of attorney to confess a
judgment; that affiant had confidence in the said
Crump and believed his statements and did not read
the printed portion of said notes.''

On May 2, 1924, plaintiff in error gave his four
notes, similar in tenor, aggregating $25,000, by which
he promised to pay to the order of E. Bryant Crump,
six months after date, the amounts set out in the re-
spective notes, to each of which was attached a power
of attorney to confess judgment.  The payee had
thereafter, and before the notes became due, indorsed
and assigned the same to defendants in error.  From
the affidavit of plaintiff in error, it appears that the
instrument in question was executed and passed into
the hands of the payee without any consideration what-
ever.  It further appears that plaintiff in error ex-
ecuted the said notes and delivered them to the payee
upon the express agreement and condition that said
notes would not be assigned or transferred, but
would be held by the payee as a ''collateral reserve,''
and that the payee's possession of said notes would
enable the payee to induce his other friends to join in
the asphalt enterprise on account of plaintiff in
error's apparent confidence in Crump's integrity and
ability, and that said notes should be used for no other
purpose.

Section 16 of the Negotiable Instruments Act [Ca-
hill's St. ch. 98, ¶ 36] provides:  ''Every contract on
a negotiable instrument is incomplete and revocable
until delivery of the instrument *for the purpose of giv-
ing effect* thereto  *  *  *;  and in such case the de-
livery may be shown to have been conditional or for a
special purpose only, and not for the purpose of trans-
ferring the property in the instrument.''

Section 55 of the Act [Cahill's St. ch. 98, ¶ 75] provides: "The title of a person who negotiates an instrument is defective within the meaning of this Act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear or other unlawful means, or for an illegal consideration or *when he negotiates it in breach of faith*, or under such circumstances as amount to a fraud."

From the facts set out in plaintiff in error's affidavit, it apears prima facie that there was no consideration for the note and that the payee's title to said note was at all times defective. (*Bell v. McDonald*, 308 Ill. 329.) Such being the case, or upon the prima facie proof being presented, the burden is upon the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course. (Section 59 of Negotiable Instruments Act [Cahill's St. ch. 98, ¶ 79] *Bell v. McDonald*, 227 Ill. App. 120; same case, 308 Ill. 329.)

In the opinion of this court the plaintiff in error, by affidavits and proof, does not have to show matters, the burden of proof of which is upon the holder of the note, defendant in error in this case. Counteraffidavits were filed by defendant in error as to the merits of the case, which were afterwards stricken out, but considerable space was given in the briefs to an argument as to the merits of the case. Defendant in error contends that the language of the affidavit recited shows that the notes were "to be converted into security and proceeds." While the terms used were not the most elegant to express the meaning intended, and the affidavits teem with much unnecessary language, the plain import of the charges made was that Crump only desired the notes and agreed to hold them for the purpose of interesting others by showing his possession of the notes and thereby plaintiff in error's confidence in him. If the notes were not to be transferred or assigned by Crump it follows, of course, that they were

of no value in his hands as against plaintiff in error, but were only to be used for their moral effect in obtaining notes and funds from others, and nothing averred in the affidavit of A. C. Baxter shows to the contrary. That this situation may arise in the use of commercial paper and that a defense is recognized where the purpose of the execution of the notes is to defraud, is owing to the language used by the Legislature and not by the construction of the courts.

The affidavit of the son, A. C. Baxter, sets out charges in plain assertion of fact, stated to be within his knowledge tending to show that plaintiff in error, an old man 85 years of age, by fraudulent representations and devices on the part of Crump, had come wholly within Crump's control, and that the notes in question were executed by reason of the undue influence and fraudulent representations upon the part of Crump practiced upon and made to plaintiff in error. These statements and proofs corroborate the charges that the notes were given for a special purpose and design and without doubt establish, prima facie, an added ground for Crump's defective title to the notes.

Plaintiff in error has presented a bill of exceptions to this court based upon an alleged error in the original entry or judgment, inasmuch as the proof presented of the execution of the power of attorney to the lower court consisted only of an affidavit sworn to by a notary in another State. Various authorities are cited tending to show that the affidavit in question constituted no proof that the power of attorney was executed in this State. (*Keefer v. Mason*, 36 Ill. 406; *Smith v. Lyons*, 80 Ill. 600; *Ferris v. Commercial Nat. Bank*, 158 Ill. 237; *Trevor v. Colgate*, 181 Ill. 129, and other cases.) Inasmuch as plaintiff in error's first appearance in the court below, in person, was by motion to open the judgment and for leave to plead, and plaintiff in error obtains that relief by the order of

this court, the assignment of error made becomes a moot question.

In the opinion of this court the affidavits presented by plaintiff in error contained matters which would constitute a prima facie defense to said note, and, if established, would cast the burden of proof upon defendant in error to show that he acquired the title to said notes as a holder in due course.

The judgment of the circuit court of Sangamon county, for the reasons stated, should be reversed and the cause remanded with directions that the judgment be opened and execution stayed, and that the plaintiff in error be permitted to plead to the declaration, the judgment and execution to stand as security.

*Reversed and remanded with directions.*