## Gid Housh, Appellee, v. Richard Tolson, Appellant.

### Gen. No. 8,302.

Opinion filed April 17, 1929.

S. S. CLAPPER and REDMON & REDMON, for appellant; RUSSELL R. RENO, of counsel.

STEIDLEY & STEIDLEY and GEORGE B. RHOADS, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

A judgment by confession was entered in the circuit court of Shelby county upon three promissory notes for the sum of $1897.50 in favor of plaintiff (appellee) and against defendant (appellant). On motion of defendant in the court below the judgment was opened up and he was given leave to plead. The cause was submitted to the court for trial who entered a judgment to the effect that the original judgment stand in full force and effect as of the date of its rendition.

It is averred in the first plea, in substance, that before the execution of the promissory notes it was verbally agreed between the defendant and the Standard Manufacturing Company, the payee in the notes, that defendant should assist the said Company in making sales of certain light plants and that at the time of the execution of said notes there was, as a part of the same transaction, also executed a certain instrument, in writing, by said Company and delivered to defendant as follows, to wit:

"Date, October 11, 1922.

"Name, Mr. Richard Tolson,

R. R. No. 3,

Moweaqua, Illinois.

"Pursuant to our conversation, our complete agreement is hereby reduced to writing for the use of both parties.

"We are reserving for you the following territory: In the vicinity of your home, to be extended as may be agreed on and permitted through Mr. Livingston with this company.

"This territory is specifically reserved for you in consideration of the fact that you have contracted with the Standard Manufacturing Company to take twelve generators on the following terms and conditions:

"You are to give three notes in the total sum of fifteen hundred dollars ($1500.00); each note in the sum of five hundred dollars, due and payable one year from date; said notes bearing 5 per cent interest.

"These notes are to be construed as a deposit applying as payment on each of twelve generators. The wholesale price of these generators to cost you $125.00 each, f. o. b. Decatur.

"It is also fully understood and agreed that you do not contract with the Standard Manufacturing Company any further financial obligation beyond the payment of $125.00 down on each of twelve generators,

or beyond the sum of fifteen hundred dollars, except such generators and fixtures as you may order in writing and cause to be shipped to you.

"In consideration of this contract whereby you are to give your time and best endeavor to this work, the Standard Manufacturing Company agrees, at reasonable stated times, on your request, to furnish you an experienced and capable closing salesman who will close any good prospects that you have worked on and brought to a point where they are ready to close, needing only the services of a capable, energetic and experienced man.

"It is also understood and agreed that, on all sales that you make yourself, you are to have the full amount of the profit and credits, and on all sales that you make in company with the experienced closing salesman, you are to receive one-half the credits an each sale, and one-half the profits to an amount not to exceed seventy-five dollars.

"The Standard Manufacturing Company agrees to furnish you with fixtures, pipe and fittings, shades, inverters, friction lighters, burner tips, domes, hot plates and irons, subject always to strikes and difficult market conditions; these always to be furnished you at the prevailing wholesale prices.

"The Standard Manufacturing Company also agrees to furnish an installer at the rate of five dollars a day and his traveling expenses between Decatur and the territory.

"On all generators, fixtures, pipes and fittings, and installations furnished, at completion of installation, this company will undertake to make collection or settlement, and, failing to do so, you will give the same your best and prompt attention to the end that the amount due the Standard Manufacturing Company shall be paid them in note or cash by light plant purchaser, within thirty days from date of shipment.

"These generators and fixtures to be delivered to you as you make bona fide sales of light plants in the territory assigned to you. It being understood and agreed that you are to purchase all fixtures and accessories from the Standard Manufacturing Company, and that the Standard Manufacturing Company will have charge of all installations in order that proper supplies and proper installation may at all times be furnished.

"This company will undertake to complete the sale of these machines for you, and will guarantee to close enough sales to make up the amount of these notes, provided you fully co-operate in securing enough good prospects ready to close, and either sell them yourself, or drive with our experienced closing salesmen as they may be assigned to you from time to time.

"When these twelve generators are sold as above specified, this entire arrangement may be renewed with the mutual consent of both parties, it being the intention to try to sell as many as from twenty-five to fifty generators a year in this territory.

"It is further understood that the Standard Manufacturing Company furnishes the money which must be advanced for all generators, supplies, accessories and labor pending such time as the light plants are installed, and the cash or notes secured from the purchaser of the light plant. It is also understood and agreed that the Standard Manufacturing Company will undertake to extend time and credit to all purchasers worthy of time and credit, and will furnish all accessories and supplies as above indicated, and will also pay in cash, on completion and installation and settlement, all profits and commissions due you or the closing salesman, or both, and will wait for from six months to one year, in some instances longer, for the money to be received from the purchasers of light plants.

"The Standard Manufacturing Company will not hold you liable for any payments on any light plants that are sold. They will look solely to the purchasers of the light plants, and in case any notes or accounts are not paid, the Standard Manufacturing Company will suffer said loss, if any.

Yours very truly,<br>The Standard Manufacturing Company,<br>By P. B. Sullivan.

"Accepted:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The Standard Manufacturing Company guarantees to carry out the provisions of the above contract or to hold you harmless and return the notes and contract if they do not make the sales of twelve generators in accordance with the above contract.

The Standard Manufacturing Company,<br>By P. B. Sullivan."

That, upon the receipt of said instrument in writing from the said Company, defendant executed said notes and delivered the same to said Company on the condition set forth in said written instrument; that defendant fully co-operated with said Company in securing prospective customers for said light plants and gave his time and best endeavors thereto, and that he was unable to make sales thereof himself and that said Company did not make the sales of said twelve generators mentioned in said contract; that there never was any consideration for the making of said notes and that said Company failed to comply with the said agreement and make the sales of said generators and that defendant never did, at any time, ever receive any consideration for the making of said notes and that said Company in fraud of the rights of this defendant and in breach of faith negotiated said notes to one Adams and the said Adams endorsed said notes, in blank, and delivered the same to the plaintiff.

In the second plea it is averred that said notes were executed and delivered to said Company upon the condition set forth in said written instrument, to wit: that said Company would return the said notes to this defendant if it did not make the sales of twelve generators in accordance with said contract; that defendant never received any consideration for said notes and said Company failed to comply with its agreement in making the sales of said twelve generators and has not held this defendant harmless but did unlawfully, wilfully, corruptly and fraudulently and in fraud of the rights of this defendant, and in breach of good faith, negotiate said notes to one Adams and said Adams endorsed said notes in blank and delivered them to the plaintiff. In other respects this plea is substantially the same as the first. Several replications were filed to these pleas to which the defendant demurred and upon the overruling of the demurrer filed rejoinders thereto and similiters were filed to the rejoinders. No errors are assigned on the pleadings.

Upon the trial the plaintiff introduced the notes and rested. The defendant then testified that he was a farmer and lived on a farm near Moweaqua and had lived there all his life; that he had bought and paid for one of the generating plants for his home about a year before he signed the notes; that he drove day after day trying to sell similar light plants and that twice the Company sent him an agent to assist in selling them; that once or twice when he requested the Company to send a man to help him it did not do so; that he tried to sell the plants himself and after the Company had refused to send a man to help him he quit trying to sell any more. The plaintiff offered no evidence in rebuttal.

Section 59 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 79, provides: "Every holder is deemed *prima facie* to be a holder in due course; but

when it [is] shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title.'' Section 55, Cahill's St. ch. 98, ¶ 75, provides: ''The title of a person who negotiates an instrument is defective within the meaning of this Act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or 'for an illegal consideration or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.''

The act further provides by section 16, in substance, that every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been *conditional* or for a *special purpose only*, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him, is conclusively presumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved.

The fifth clause of the written agreement set out in the pleas provides that these notes are to be construed as a deposit applying as payment on each of twelve generators. The thirteenth clause provides that the

Company will undertake to complete the sale of these machines and will guarantee to close enough sales to make up the amount of these notes, provided defendant fully co-operates in securing enough good prospects ready to close and either sell them himself or drive with its experienced closing salesman as they may be assigned to him from time to time. The seventeenth or last clause of the agreement provides that the Company guarantees to carry out the provisions of the above contract and to hold defendant harmless and return the notes and contract if they do not make the sales of twelve generators in accordance with the above contract.

Defendant testified that he was only able to sell two of the machines and never received any credit from the Company for these sales. It is apparent that the defendant has never received any consideration for these notes and that the negotiation of them by the Company, under the circumstances shown by the pleas and the proofs was in direct violation of the last or seventeenth paragraph of the written agreement, wherein the Company guaranteed to hold him harmless and return the notes and contract if they did not make the sales of the twelve generators in accordance with the contract. The negotiation of these notes was a breach of faith and a fraud upon the rights of the defendant and cannot be supported by any sense of honesty in business dealings in so far as the Company was concerned, and after the evidence had developed these facts, the burden of proof was upon the plaintiff to show that he was a holder of the notes in due course.

In the case of *Bell v. McDonald,* 308 Ill. 329, the proof showed that a Stock Powder Company, by its agent, succeeded in pursuading the defendant to order 40,000 pounds of stock powder at a selling price of $2800 and to execute two notes of $1400 each, payable to the order of said Company, upon a parol agreement that the Company would hold said notes as col-

lateral for whatever powder should be sold. The court said:. "Under these circumstances to sell the instruments and put them in circulation as valid promissory notes of the appellee was manifestly to negotiate them in breach of faith and under such circumstances as amount to a fraud and is within section 55, which declares that the title of one who so negotiates an instrument is defective." The court further held: "The court was therefore right in instructing the jury that the burden was on the appellant to show that his purchase of the notes was in good faith for value and without notice of any defense to the notes and in refusing to give the appellant's instructions to the contrary." This court, in the case of *Beard v. Baxter,* 242 Ill. App. 480, where the facts showed that the note in question was given to the payee named therein for the special purpose of showing it to others in order to build up his credit, held that the negotiation of the same was a breach of such agreement and that the payee had at all times a defective title. In the case of *McNight v. Parsons,* 136 Ia. 390, where a note was given for the payment of a cow upon condition that it was not to be negotiated nor be of effect if the payee failed to deliver the cow in calf as agreed, which the plaintiff failed to do, it was held that the act of the payee in negotiating and putting the note in circulation was such a fraud upon defendant as to cast the burden upon the plaintiff to show he received the instrument for value in good faith and without notice. In the case of *Pierson v. Huntington,* 82 Vt. 482, the evidence showed that the note was given for the purchase of certificates for certain liquors in bond and at the time of the execution thereof a separate agreement in writing was executed between the maker and the payee to the effect that if the goods did not give satisfaction, they might be held subject to the payee's order and the note should be returned upon the return of the certificates. The goods were not found to be satisfac-

tory and the maker returned the certificates but the payee refused to return the note and sold it to the plaintiff. It was held that the title to the note in the payee was defective and the burden of proof was upon the plaintiff to establish the fact that he obtained it for value in good faith and without notice. In the case of *Beach v. Nevins,* 162 Fed. Rep. 129, the note was executed under an agreement that certain stock of a corporation should be procured and delivered by the payee to the maker within a specified time which was not done and it was held that a negotiation of the note, under these circumstances, was a breach of faith and the title thereto was defective. This case is also reported in 18 L. R. A. (N. S.) 288, and in a note thereto many cases from different jurisdictions are cited upon this question. In the case of *Glendo State Bank v. Abbott,* 30 Wyo. 98, 216 Pac. 700; 34 A. L. R. 294; the Supreme Court of Wyoming in an exhaustive opinion held the same principles of law as announced in the case of *Bell v. McDonald, supra,* and as hereinabove expressed.

Under the facts in this case the negotiation of the notes in question by the payee was a breach of faith and fraudulent and the burden of proof shifted to the plaintiff to show that he was a holder of the notes without notice of the defective title of the payee and for a valuable consideration.

The first endorsement on each note is as follows: "For value received we hereby transfer and assign all our right, title and interest in this note to A. L. Adams. The Standard Mfg. Comp'y. By: R. Carter, Sec. & Treas." No question has been raised as to what title the endorsee, Adams, obtained by this endorsement and it is unnecessary for us to pass upon it.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*