R. H. Ehlert, Appellant, v. Haldane Cleminson,
Appellee.

Gen. No. 33,197.

Opinion filed May 29, 1929.

ADAMS & ADAMS, for appellant; LELAND E. FALDER, of counsel.

ALTHEIMER & MAYER, for appellee; A. B. MANION, of counsel.

MR. JUSTICE RYNER delivered the opinion of the court.

On January 31, 1927, the defendant, Haldane Cleminson, executed his judgment note for the principal sum of $15,000, payable three months after date, and delivered it to the payee, William F. Jasmund. The consideration was a check in like amount. Some time after maturity, the exact date not appearing from the evidence, Jasmund transferred the note to the plaintiff, R. H. Ehlert. On October 6, 1927, the plaintiff obtained a judgment by confession upon the note for the sum of $18,115 and costs. The judgment was opened and a jury trial had, resulting in a verdict in favor of the defendant. Judgment was entered on the verdict and the plaintiff took this appeal.

Upon the trial of the cause, the note was admitted in evidence, without objection. The plaintiff then rested his case.

The defendant put in evidence four agreements in writing. Two of them bore Jasmund's signature and the others were evidently executed with his knowledge and approval. The first of these documents, as appears from the abstract, was in substance as follows:

"Agreement dated January 20th, 1927, that a non-profit Corporation is to be formed under the laws of the State of Michigan for the operation and conduct of the Great Northwoods Club for recreational purposes, and further agreed by the parties hereto that the land under contract of purchase to be exchanged for all of the stock in said corporation.

"It is further agreed that an issue of $300,000.00 worth of bonds be issued by the above said corporation against 10,000 acres of land.

"It is further agreed by the parties that ten per cent (10%) of all of the above stock in said corporation be delivered to William F. Jasmund for the loan of $15,000.00 with interest at the rate of six per cent (6%) per annum, which interest is to be paid when and as principal payments are made on said loan.

"It is further agreed that $280,000.00 of the aforesaid bond issue be placed with the Marquette Park State Bank as Trustee, and that said Trustee be instructed to deliver to said William F. Jasmund, twenty-five per cent (25%) of the proceeds of the sale of all bonds so placed in its hands until the principal sum of $15,000.00, together with all interest due thereon, is paid.

> Haldane Cleminson
> J. Dwight Funk
> W. Callahan
> William F. Jasmund."

All of the instruments were signed by the defendant Cleminson, W. Callahan, J. Dwight Funk and two of

them by the Marquette Park State Bank. In none of them was any mention made of the note. Each acknowledged an indebtedness on the part of Funk, Callahan and the defendant Cleminson to Jasmund in the sum of $15,000. Only the first acknowledged that 10 per cent of the stock of the proposed corporation was to be given to Jasmund. All of them provided that the indebtedness to Jasmund should be paid out of the proceeds of the sale of bonds.

The agreements following the first in point of time were executed, two of them on February 21, 1927, and the last on August 3, 1927, several months after the maturity of the note in question. So far as the issue involved in this appeal is concerned their provisions are, in substance, identical.

The undisputed evidence is that the bonds in question were issued and deposited about February 21, 1927, with the Marquette Park State Bank. Up to the time of the trial, which began on July 19, 1928, none had been sold and nothing had been paid on account of the indebtedness to Jasmund.

In support of the defense interposed by him, the defendant testified that he and his associates needed some more money to pay on account of the lands to be acquired, which were referred to in the contract of January 20, 1927, before they could issue and place with the escrow agent the bonds necessary to be sold for the purpose of paying for the lands; that he went to Jasmund and told him of the facts; that Jasmund asked for security for the $15,000 if he was to advance that amount and produced the note in question saying that he wanted it as security; that the defendant said that he would give a receipt for the money but Jasmund replied that he had the note all made out and if it was signed he would give it back to the defendant when the escrow agreement was signed. By "escrow agreement" he evidently had in mind the agreement

subsequently made, and bearing date of February 21, 1927, in which it was recited that a deed of the lands to the Great Northwoods Club had been deposited with the escrow agent and, according to the defendant's testimony, the bonds intended to be issued, or temporary ones, had become available for sale. He further testified that on a number of occasions he demanded of Jasmund the return of his note but that in each instance he was met with a promise of future compliance which was never fulfilled.

This testimony was not directly contradicted. The plaintiff did not testify. Jasmund took the witness stand as a witness for the defendant but was not interrogated about the matters testified to by the defendant. Although he was twice called to the stand he was not cross-examined by counsel for the plaintiff. Jasmund's father testified that, after the maturity of the note, he asked the defendant a number of times when the note was going to be paid, and that the reply was always, in substance, that it was just a matter of time until payment would be made. On cross-examination he stated that the first request for payment of the note was made about three months after the note was given but when asked as to the month or season of the year 1927 when the other requests were made he repeatedly answered that he could not recall or did not know. His testimony is entitled to little weight.

The evidence is uncontradicted that the plaintiff, before acquiring the note, was notified by the defendant and his attorney of the claims of the defendant as to the facts and circumstances attending the execution of the instrument. One of the errors assigned is that the court improperly instructed the jury. The abstract shows that the jury were instructed orally and that after they had been instructed the court inquired whether there was any objection but that there was no response to the inquiry.

It thus appears from the record that there are no questions of fact or rulings of the trial court for our consideration except the action of the court in admitting evidence of the facts as to the condition upon which the note in question was executed and delivered.

Outside of the question of error in the giving of one instruction, which we consider was waived in the trial court, the entire argument of counsel for the appellant is based upon the assumption that the testimony of the defendant was in contradiction of the express and unconditional terms of a written instrument. The assumption is unwarranted. The testimony received did not alter or vary the terms of the note in any respect. It simply showed that the instrument was delivered, not absolutely, but upon condition. The testimony of the defendant standing alone proves the condition. In addition to that there is corroborative documentary evidence. The promoters of the Club agreed, in writing, to repay to the defendant out of the proceeds of the sale of bonds the $15,000, and in addition to give him a 10 per cent interest in the corporation to be formed.

That parol evidence is admissible to show the conditional delivery of a note cannot be questioned. In the case of *Bell v. McDonald,* 308 Ill. 329, the Supreme Court of this State said:

"It is argued on behalf of the appellant that the statement in the pleas that the instruments were delivered only as collateral security for the stock powder to be sold and were to be held by the payee and surrendered when the amount for which the stock powder was sold was collected by the payee is only an attempt to change and qualify the unconditional written promises by a contemporaneous parol agreement, in violation of the general rule that an instrument absolute on its face cannot be shown by parol to be conditional. While this is a recognized rule of general application, yet evidence that the instrument was not intended to take

effect as a valid obligation until the occurrence of some future contingency is usually held admissible between the original parties and between them and those taking with notice. Such evidence, it is held, does not contradict the terms of the writing or vary its legal import but tends to show that it was never delivered as a present contract. The possession of a contract unexplained may be presumptive evidence of its delivery, and under such circumstances no alteration of the terms of the contract could be shown, but until the delivery the writing is inoperative, and the delivery upon condition does not make it operative until the condition has been complied with. Evidence of such conditional delivery does not alter or vary the contract.''

The fact that in that case no consideration for the notes passed, that there was evidence of fraud, and that the trial court erred in its ruling on the admissibility of evidence cannot be given the effect of rendering the rule, there distinctly pronounced and supported by ample reason and authority, inapplicable to the facts in the instant case.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

HOLDOM, P. J., and WILSON, J., concur.