Traders Investment Company, Appellee, v. George J. Kalas and Emma L. Kalas, Appellants.

## Gen. No. 31,855.

1. NEGOTIABLE INSTRUMENTS—*when burden cast upon purchaser to show he is a holder in due course.* In an action against the makers of a promissory note, their evidence to the effect that the note was executed to a builder upon an agreement that it should not be negotiated until a garage had been completed according to contract, and that it had not been so completed, casts upon the plaintiff, who purchased the note, the burden to prove, under the Negotiable Instruments Act, § 55, Cahill's St. ch. 98, ¶ 75, that he was a holder in due course.

2.  NEGOTIABLE INSTRUMENTS—*evidence of good faith by purchaser not justifying direction of verdict in his favor.*  Where, in an action against the makers of a promissory note, there is evidence to the effect that the note was executed to a builder upon an agreement that it should not be negotiated until a garage had been completed according to contract, and that it had not been so completed, evidence to show good faith by plaintiff, that he had purchased the note on the date of its execution for cash, but not showing how much cash, does not exclude the possibility of bad faith under the Negotiable Instruments Act, and it is therefore error to direct a verdict for plaintiff.

Appeal by defendants from the Municipal Court of Chicago; the Hon. ALFAR M. EBERHARDT, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1927. Reversed and remanded. Opinion filed December 12, 1927. Rehearing denied December 27, 1927.

GEORGE H. MOLLAN and WILLIAM T. PRIDMORE, for appellants; FERNE MOLLAN and MARK H. MOLLAN, of counsel.

JOSEPH F. GROSSMAN, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

On March 2, 1926, the plaintiff confessed judgment against defendants for the sum of $461.86 and costs, upon power of attorney attached to a promissory note dated November 27, 1925, payable in 24 consecutive monthly instalments. This note was by its terms payable to the order of the Perfect Construction Company and the statement of claim alleged that it had been duly indorsed before maturity for value and delivered to the plaintiff, who was the legal owner thereof.

The defendants thereafter, on April 14, 1926, made a motion to vacate this judgment and in support of the motion presented affidavits of defendants George J. and Emma L. Kalas. The affidavits in substance stated that the note was given as a part consideration for the construction of a garage by the Perfect Construction Company; that the note was not signed upon

the day of its date but prior thereto, namely, on November 10, 1925, and before the construction of the garage was begun; that the contract for the construction of the garage provided that it should be built according to certain plans and specifications; that after the note was given the company proceeded to build a garage on the property but, contrary to the contract, failed to construct same according to the special plans and specifications, the several respects in which the Construction Company had failed to comply with the specifications being particularly set up.

The affidavit of defendant Emma L. Kalas averred "that the pretended note sued upon in this cause was on the 10th of November, 1925, prepared and placed in the hands of John Reiss, to insure his principal that upon the completion of a garage in accordance with certain specifications that such a note would then be available and that the pretended note sued upon is in fact the said proposed note; that said pretended note has never been delivered by the makers, or by anyone authorized to make a delivery for them, and in support of said contention said affiant shows that a proposed garage in said specifications mentioned has never been completed in accordance with said specifications which said completion was the condition precedent required to be fulfilled before the principal of said John Reiss was authorized by defendants to accept said pretended note as valid and binding obligation of the makers." This affidavit also averred that there was no such person, either natural or corporate, as Perfect Construction Company; that, therefore, no valid indorsement of said pretended note could be made, and that plaintiff was therefore not the legal owner or holder of the note.

An order was entered granting leave to the defendants to defend and a trial by jury was demanded, there being a further order that the affidavit should stand as the affidavit of merits for the defendants.

Upon the trial the plaintiff offered the note sued upon in evidence, to which defendants objected on the ground that the note had not been delivered, but this objection was overruled. In addition to the power to confess judgment, the note states that it was given to evidence an indebtedness for the balance due upon a contract for labor and material furnished by the payee for the improvement of certain premises described, "and the undersigned hereby acknowledges that said contract was satisfactorily completed by the payee (contractor) on the date of this note in accordance with the terms of said contract and in a good, substantial and workmanlike manner." Upon the back the note is indorsed—"Without Recourse

Perfect Construction Co.
by Chas. Greenhauff."

The plaintiff rested its case and the motion of defendants for an instructed verdict was denied. Defendant George J. Kalas testified that at the time he affixed his name to the note one Reiss, an agent of the Perfect Construction Company, and Mrs. Kalas were present; that he was called to the telephone and Reiss handed Mrs. Kalas a piece of paper which looked very much like the note, and that when he got through answering the telephone he asked her what she had signed; that he said, "You can't tell what a piece of paper like that amounts to"; that Reiss said that they had to have some way of making sure they collected their money; that he would hold that piece of paper until such time as they accepted the garage, "and that it was necessary for them to receive a completion slip signed by me first"; that Reiss said he would hold the paper until such time as the defendant signed the completion slips. The witness further said that the men who were building the garage were notified while it was going up that it was not going up right, and that he refused to sign the completion slips; that these were presented to him for signature two or

three days before Thanksgiving day; that the contract was in fact signed on November 9th.

The witness further said that John Reiss was the man he was doing business with and that nobody else called on him in connection with the contract or the note; that he never knew Charles Greenhauff in connection with the matter and never had any dealings with him, and that he was never in the office of the Perfect Construction Company. This witness also testified as to the different respects in which the construction of the garage was imperfect and contrary to the specifications of the contract.

The defendant Emma L. Kalas further testified: "Mr. Reiss was there at the time I signed that, and I asked him what it was for, and he said, 'It doesn't mean anything; just go ahead and sign it.' I did not read it. That was about all that was said from the time my husband left the room to go to the telephone until he came back." She further testified that she refused to sign the completion slip when it was presented.

The plaintiff then offered evidence tending to show that the Perfect Construction Company was a copartnership consisting of Morris Krupnick and Charles Greenhauff and that either of the partners had the right to execute and indorse promissory notes in the name of the partnership. Evidence was also introduced tending to show that the Traders Investment Company purchased the note in question on November 27, 1925, and paid cash for it, and that for the same and other items plaintiff gave its check for $829.40.

The defendant renewed its motion for a directed verdict which was denied, and the court then instructed the jury to return a verdict for the plaintiff in the sum of $461.86, upon which verdict when returned the court entered the judgment from which this appeal is taken.

The controlling question in the case is whether the court erred in directing a verdict for the plaintiff. That question must be decided by a construction of certain sections of the Negotiable Instruments Law (see Cahill's St. ch. 98; Smith-Hurd's Ill. Rev. St. 1927, ch. 98, p. 1860). Section 55 of the act provides in substance that the title of the person who negotiates an instrument is defective within the meaning of the act when he obtains the instrument or any signature thereto by fraud, duress, force or fear, or other unlawful means, or for an illegal consideration, "or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." Section 58, Cahill's St. ch. 88, ¶ 78, provides in substance that, in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable, and section 59, Cahill's St. ch. 98, ¶ 79, provides that every holder is deemed prima facie to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument is defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course. The last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title. Section 52, Cahill's St. ch. 98, ¶ 72, defines the holder in due course as—

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That the instrument is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he

had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.''

If the testimony of these defendants was true (and they had a right to have a jury pass upon the question of whether it was or not) a jury could have reasonably found that the note was given to Reiss upon the agreement that it should not be negotiated until the garage had been completed according to the contract, and this being true, the burden of proof was cast upon the plaintiff (under section 59 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 79) to prove that he was a holder in due course.

The plaintiff upon rebuttal introduced some evidence tending to show that it was a holder in due course, and it showed that it purchased the note in question on the date of its execution and paid cash for it, but how much cash is not disclosed by the evidence. It offered no evidence other than this tending to show good faith on its part. This proof did not exclude the possibility of bad faith, and one purchasing in bad faith would not be a holder in due course. In view of the plain provisions of the statute it is unnecessary to cite authorities. *Bell v. McDonald,* 308 Ill. 329, however, seems to be conclusive.

For the error of the court in directing a verdict, the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*

O'CONNOR and McSURELY, JJ., concur.