# Albert J. Kraetsch, Appellant, v. City of Chicago, Appellee.

## Gen. No. 21,255.

1. BILLS AND NOTES, § 306*—*when maker making second payment after failure of drawee may recover amount of payment from payee.* Where plaintiff in action of assumpsit gave defendant, the City of Chicago, a cashier's check on a certain date to pay for saloon licenses from such city and, although accepted on such date, it was not presented for payment until over three weeks later, and the evidence showed that if presented at the bank on which it was drawn at any time up to and including the day before such latter date it would have been paid, but that such bank failed on the day of presentation, and plaintiff did not consent that defendant might delay the due presentment of said check for any reason and had no knowledge if any practice of defendant to hold such checks until the receipt of report from its police department and, under protest and because of threats of arrest the plaintiff six weeks after the issuance of the check again paid defendant $1,000 on account of such licenses, *held* plaintiff was entitled to recover a judgment for such $1,000.

2. PAYMENT, § 5*—*when acceptance of check operates as payment of debt.* The acceptance of a check of a third party implies an undertaking of due diligence in presenting the check for payment, and in case of loss through want of due diligence such acceptance will be held to operate as payment.

3. BILLS AND NOTES, § 279*—*what constitutes due diligence in presentation of check.* Due diligence on the part of the payee of a check of a third person requires it to present same for payment on the same day, or, at the furthest, within banking hours on the next day after the check is delivered to it.

4. PAYMENT, § 5*—*when acceptance of check operates as payment.* In the absence of an agreement to the contrary, a check received for a debt is merely conditional payment, or satisfaction of the debt when paid; but the acceptance of such check implies an undertaking of due diligence in presenting it for payment, and if the party from whom it is received sustains loss by want of such diligence, it will be held to operate as actual payment.

5. CUSTOMS AND USAGES, § 21*—*when custom of holding checks for license fees not binding on debtor.* The custom of the City of Chicago of holding a check for license fees of saloon until the receipt

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of a favorable report from the police department, in order to bind plaintiff, a saloon keeper, must have been actually known to him when the check of a third person for a certain amount was delivered in order to justify the obtaining of a similar sum.

6. Customs and Usages, § 27*—*when evidence insufficient to show knowledge of custom of holding checks by city until it receives favorable report on applicant for saloon license.* In an action of assumpsit by a saloon keeper against a city to recover the amount of a second payment made by plaintiff to defendant after failure of drawee, evidence *held* not to show that plaintiff had knowledge of defendant's custom of holding checks given in payment of saloon license fees until receipt of a favorable report from the police department.

7. Customs and Usages, § 21*—*when notice to agent of custom not binding on principal.* Where an agent of a saloon keeper merely acts as a messenger in delivering a check for license fees to the city collector, even though such messenger had knowledge of a custom on the part of such city collector of holding such checks until receipt of a report from the police department, such knowledge *held* not to be notice to plaintiff and as not binding upon him.

8. Escrows, § 6*—*what does not constitute delivery of check in escrow.* By the terms of a Chicago city ordinance, and by usage and practice in the city collector's office, payment of a saloon license fee is required before May 1st, and the acceptance of a check in compliance with that requirement does not cause the delivery of such check to be in the nature of an escrow agreement even though such city collector claims that such checks are withheld from presentation pending the receipt of a report from the police department as to the validity of signatures on plaintiff's saloon license.

9. Escrows, § 6*—*what does not constitute delivery of a check in escrow.* Delivery of a check in payment of city saloon license fees to a city *held* not to be in the nature of an escrow agreement, the essential requirement of an escrow being that delivery can be made only to a stranger and not to a party or his authorized agent.

Appeal from the Superior Court of Cook county; the Hon. Clarence N. Goodwin, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Reversed and judgment here with finding of facts. Opinion filed March 28, 1916. Rehearing denied April 10, 1916.

## Statement of the Case.

On June, 17, 1914, Albert J. Kraetsch, plaintiff, commenced an action in assumpsit against the City of Chicago, defendant, to recover back the sum of $1,000

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

which he alleged he paid to defendant on June 12, 1914, *under protest* and because of threats of arrest, etc., for license fees for the period of six months for two saloons operated by him, one on West 63rd street and the other on West 74th street in said city, and which fees he further alleged he had previously, on April 29, 1914, paid defendant by a cashier's check accepted by it. The cause was tried before the court without a jury. Some of the facts were presented to the court by stipulation of the parties, and other facts appeared from the testimony of witnesses. On November 27, 1914, the court found the issues for the defendant, overruled plaintiff's motions for a new trial and in arrest of judgment and entered judgment for costs against the plaintiff, who by this appeal seeks to reverse that judgment and have this court enter a judgment here in his favor against the defendant for $1,000.

The material facts are in substance as follows: The locations of the two saloons were in a district where it was required to have a petition, signed by a majority of citizens and legal voters residing within a radius of one-eighth of a mile of the saloon, requesting that a license be granted. It was the practice where such signatures were required to have the saloon keeper deliver such petition to the police department at the police precinct in which the saloon was located about fifteen days prior to the commencement of the license period, in order to have the signatures verified by said department; and subsequently, after verifying such signatures, said department sent such petition to the city collector's office with its recommendation for or against the issuance of the license. In the present case it appears that plaintiff delivered the respective petitions of citizens and voters as to said saloons to the police department about April 15, 1914. During the months of April and May of that year plaintiff was a depositor in the Ogden Park Bank, a private bank,

located in the City of Chicago and conducted by one Baumgartner and doing a general banking business. Plaintiff had a checking account with the bank, and on April 29, 1914, the bank, at plaintiff's request, issued and delivered to him its cashier's check for $1,000, payable to "Edward Cohen, city collector," and the amount of the check was charged to plaintiff's account with the bank. On the same day, April 29th, plaintiff, having previously made applications in writing at the office of the city collector, Edward Cohen, for the issuance of licenses to operate each of the saloons at said locations for the period from May 1 to October 31, 1914, filed with said city collector the required bonds, etc., and also by an agent named Hinkamp delivered to said city collector said check for $1,000 *in payment* of the $500 license fee for each saloon. The city collector accepted said applications, bonds, etc., and said check, but the licenses were not then issued for the reason that said official had not received the reports of the police department as to the verification of the signatures on the petitions above mentioned. The city collector held said check *without cashing or depositing the same* until May 21, 1914, when he turned the same over to the city treasurer, who, on the same day, deposited it in the Illinois Trust & Savings Bank, located in Chicago, to the credit of defendant, which bank delivered said check on May 22nd to the First National Bank of Englewood, also located in Chicago, which last named bank on the last named day gave a package of checks, drawn on or payable at the Ogden Park Bank, to its messenger for collection, together with a slip showing the separate and total amount of the checks in said package. On the same day the messenger, without examining the checks in said package to see if they corresponded with the amounts mentioned on the slip, shoved the package and slip through the paying teller's window at the Ogden Park Bank, and the paying teller, after examining the package and not

finding therein said check for $1,000, refused for that reason to pay the check. On the following morning, May 23, 1914, the Ogden Park Bank failed and closed its doors. It clearly appears from the evidence that from the time of the issuance on April 29th of said cashier's check up to and including May 22nd, said Ogden Park Bank had sufficient funds on hand available for the payment thereof, and that had it properly been presented for payment at said bank at any time up to and including May 22nd it would have been paid. The defendant, City of Chicago, never received the $1,000 on said check or any part thereof, and the check has never been returned to plaintiff.

It further appears that, by ordinance of the City of Chicago relative to the issuance of saloon licenses, the saloon license year is divided into two periods— the first period being from May 1st to October 31st, inclusive, and the second period being from November 1st to April 30th, inclusive, of the following calendar year, and that the fee for each period of six months is $500, payable *in advance*. A deputy city collector, J. F. McCarthy, in charge of the issuance of saloon licenses, testified in substance that by the usage or practice of his office applications for licenses may be presented at any time, but that the license fee for the first period *must* be paid before May 1st, "even though we have not completed our investigations"; that when a voters' petition is required it is the practice not to issue the license until the police department makes its report as to the verification of said petition and its recommendation, and to hold the money or check given in payment of the license fee until the receipt of such report; that no license is issued "unless we have the money for it, or something that represents money"; and that in payment of a license fee either currency, or a cashier's check, or a certified check, or even an uncertified check, is accepted.

It further appears that, under date of April 20, 1914,

said city collector by communications in writing referred the applications for the two licenses to the police department for its verification and recommendations; that the application as to the saloon on West 63rd street was not returned to the city collector's office until May 20, 1914, in which return said department recommended the granting of the license; and that the application as to the saloon on West 74th street was not returned until May 27, 1914, and that as to it said department also recommended the granting of the license. It further appears from the testimony of J. F. O'Brien, cashier in the city collector's office, that on May 20, 1914, after the return of the favorable report of the police department as to the saloon on West 63rd street, he (O'Brien) received from said deputy collector, McCarthy, the two bonds which accompanied the respective applications and said cashier's check for $1,000; that one bond was all right and the one license was ready to be issued, but on the other bond there was a notation that the application had not yet been returned by the police department with its recommendation, and that he should hold $500 with said other bond; that he deposited said check with the city treasurer the next morning (May 21st) and that he (O'Brien) "put $500 in currency aside" with said other bond which he was holding.

It further appears that after both licenses were ready to be issued the defendant refused to issue the same to plaintiff unless he paid defendant the further sum of $1,000, as license fees; that defendant threatened to prevent plaintiff from operating said saloons without said licenses and to cause plaintiff's arrest therefor unless he made such payment, and that on June 12, 1914, plaintiff, under protest, paid defendant said further sum of $1,000, in order to procure the issuance of said licenses for said period.

Defendant in its affidavit of merits filed with its plea of the general issue to plaintiff's declaration and af-

fidavit of claim, stated as ground of defense that "when plaintiff paid said check into the office of the city collector he *well knew* that the city collector must necessarily hold the check until such time as the officers of the city could investigate the validity of the signatures on plaintiff's saloon petition, and if any delay was caused in the depositing of said check it was caused by and with the consent of plaintiff."

On this issue, as to plaintiff's knowledge of the custom or practice in the city collector's office, as testified to by McCarthy, of holding checks given by applicants for licenses until the police department investigated and reported as to the validity of the signatures on petitions, where such petitions and signatures are required, such knowledge was not shown. Neither was it shown that plaintiff consented to the holding of the check in question until the police department had made its said investigation and report. Plaintiff testified that he had been in the saloon business for twelve years; that he generally went to the city collector's office himself and personally got his license and that he had always in the past procured the license the same day he paid the fee therefor either in cash or by check; that at this particular time he was busy and requested Hinkamp to get the licenses for him which the latter agreed to do; and that he never knew that there was any custom or practice in said office of holding checks but knew that the money for the license had to be paid before May 1st. Hinkamp testified that when he delivered the check on April 29th at the city collector's office nothing was said to him about holding the check and that he did not know this was going to be done.

VINCENT D. WYMAN, CHARLES E. CARPENTER and O. W. JURGENS, for appellant.

RICHARD S. FOLSOM, for appellee; LEON HORNSTEIN, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

Counsel for plaintiff contend that the trial court erred in entering judgment against the plaintiff and should have entered a judgment for $1,000 against the defendant. After careful consideration of the facts of this case and the law applicable thereto we agree with the contention.

The cashier's check of $1,000 in question was that of a third party; it was made payable directly to the city collector; and it appears to have been accepted by the city collector in lieu of cash. The ordinance of the City of Chicago provides that the license fee of $500 for the period of six months beginning on May 1st shall be paid *in advance* and it is shown by the testimony of a deputy city collector that the payment of such fee before May 1st is absolutely required. The check was accepted on April 29th, but it was not deposited for collection by the defendant until May 21st, and not presented for payment prior to the failure of the Ogden Park Bank on May 23rd. And the evidence shows that had it been presented at that bank at any time up to and including May 22nd it would have been paid. We understand it to be the law that the acceptance of a check of a third party implies an undertaking of due diligence in presenting the check for payment and that in case of loss through want of due diligence such acceptance will be held to operate as payment. In *Brown v. Schintz,* 202 Ill. 509, 514, the court says, quoting from Story on Promissory Notes: "If a creditor accepts the note of a third person, or draft or bill, though not in payment, he accepts the duty of doing everything necessary to fix the liability of the parties to the paper." And the court further says (p. 515), quoting from Daniel on Negotiable Instruments: "The receipt of a check, therefore, before presentment, if there is no laches on the part of the holder, is not payment of the debt for which it is delivered.

But if the party receiving it is guilty of laches in presenting it, and the bank in the meantime suspends payment, he thereby makes it his own and it shall operate as payment of his debt, the drawer having funds in the bank at the time of drawing the check and not having withdrawn them." In the present case, the bank and all parties interested being located or residing in the City of Chicago, due diligence on the part of defendant required it, as payee of the check in question, to present the same for payment on the same day, or at the furthest the next day, within banking hours, after the check was delivered to it. (*Brown v. Schintz, supra; Bickford v. First Nat. Bank of Chicago*, 42 Ill. 238, 244.) In *Kilpatrick v. Home Building & Loan Ass'n*, 119 Pa. St. 30, 36, it is said: "In the absence of an agreement to the contrary, a check or promissory note, of either the debtor or a third person, received for a debt, is merely conditional payment, that is, satisfaction of the debt, if and when paid; but the acceptance of such check or note implies an undertaking of due diligence in presenting it for payment, etc., and if the party from whom it is received sustains loss by want of such diligence, it will be held to operate as actual payment." (See also, *Manitoba Mortgage Co. v. Weiss*, 18 S. D. 459; *Smith v. Miller*, 43 N. Y. 171, 176.) We know of no reason why in this case the above well-settled rules of law are not applicable to the defendant, City of Chicago.

While the testimony of the deputy city collector, McCarthy, tended to show that it was the custom or practice of his office not to issue a saloon license, and to hold the money or check accepted in payment of the license fee, until receiving the report of the police department as to the validity of the signatures on the voters' petition where such signatures were required, still the evidence does not show that plaintiff, or his agent Hinkamp, had knowledge of that custom or practice, or that either knew when the check was de-

livered that it would be held and not deposited until the receipt of a favorable report of the police department as to said signatures by the city collector, or that either consented to such action. The custom or practice, in order to be binding on plaintiff, must have been actually known to him when the check was delivered. (*Bank of Commerce v. Miller,* 105 Ill. App. 224.) And even if Hinkamp, who simply acted as a messenger for plaintiff to deliver the check to the city collector's office, had knowledge that there was such a custom or practice (as counsel for defendant contend his testimony tends to show he did), we do not think that such knowledge on Hinkamp's part would, under all the testimony, be notice to plaintiff and binding upon him. (31 Cyc. 1648; *Burton v. Perry,* 146 Ill. 71, 118; *Snyder v. Partridge,* 138 Ill. 173, 184.)

And we do not think there is any merit in the contention of counsel for defendant that the delivery of the check was in the nature of an escrow agreement. By the terms of the city ordinance, as well as by the usage or practice in the city collector's office, payment of the license fees was required before May 1st, and the check was accepted as a compliance with that requirement. Furthermore, one of the essential requirements to a deposit in escrow is that the delivery can be made only to a stranger and not to a party or his authorized agent. (16 Cyc. 571; *Worrall v. Munn,* 5 N. Y. 229; *Baum v. Parkhurst,* 26 Ill. App. 128; *Ryan v. Cooke,* 68 Ill. App. 592.)

The judgment of the Superior Court is reversed and judgment is entered here in favor of the plaintiff, Kraetsch, and against the defendant, City of Chicago, for the sum of $1,000.

*Judgment reversed and judgment here.*

Finding of Facts: We find as facts that on April 29, 1914, plaintiff by an agent delivered to defendant, and defendant accepted, the $1,000 check in question in payment of license fees for two saloons; that neither

McCarthy et al. v. Chicago & Northwestern Ry. Co., 198 Ill. App. 405.

plaintiff nor his agent consented that defendant might delay the due presentment of said check for any reason; that plaintiff had no knowledge of any custom or practice of defendant to hold such checks until the receipt of any report from its police department; that defendant held said $1,000 check, and made no attempt to have the same presented for payment, until May 21, 1914; that because of such delay in presentment the money on said check was not received by defendant; and that on June 12, 1914, plaintiff again paid defendant, under protest and because of threats of arrest, the sum of $1,000 for said license fees for said two saloons.