Economy Fuse and Manufacturing Company, Plaintiff in Error, v. Standard Electric Manufacturing Company, Defendant in Error.

Gen. No. 36,744.

Heard in the second division of this court for the first district at the June term, 1933.
Opinion filed March 6, 1934.

GARDNER, FOOTE, MORROW & MERRICK, for plaintiff in error; WALTER M. FOWLER and ROBERT L. ELLIOTT, JR., of counsel.

HARRY D. IRWIN, for defendant in error; ELMER F. DENEKE, of counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiff brought an action to recover for goods and merchandise delivered to defendant, Standard Electric Manufacturing Company, during April, 1932, pursuant to a contract entered into by the parties March 6, 1931. On a trial by the court without a jury there was a finding and judgment in favor of defendant which plaintiff seeks to reverse by this writ of error. No question is raised on the pleadings.

On the trial it was stipulated that defendant received from plaintiff $2,798.31 worth of merchandise during April, 1932; that on or about May 10 or 11, 1932, defendant forwarded by mail its check drawn on the Citizens State Bank of Chicago (hereinafter referred to as the bank) for $2,582.96, which was received by plaintiff May 13, 1932; that the check was remitted as payment in full of the above merchandise, less certain deductions noted on the back thereof aggregating $215.35; that the bank was closed by the auditor of public accounts May 25, 1932; that the circuit court confirmed the appointment of the auditor's receiver, who has since been in charge of the affairs of the bank; and that from the time it drew the check until the bank closed defendant had on deposit, subject to check, more than enough to cover the amount of same.

In addition to the stipulation the salient facts, as disclosed by the evidence, are that plaintiff did not present the check to the bank for payment prior to its closing; that May 2, 1932, defendant delivered to plaintiff's driver for return to plaintiff a number of cartons of merchandise (more than 7,000 electric switch plates, approximately 6 inches by 2 inches, composed of a material somewhat like bakelite); that the driver receipted a bill of lading for them and delivered them to plaintiff's Chicago plant, from which they were sent to its plant at Palatine, Illinois, where they had been manufactured; that when plaintiff received the check May 13, 1932, it was accompanied by a debit memoran-

dum indicating the number, description and price of the plates returned as defective May 2, 1932, and for which a credit of $159.49 was claimed; that this amount, plus an allowed credit of $3.15 and claimed discount of $52.71, comprised the $215.35 deduction demanded from the full amount due; that upon receipt of the check and accompanying debit memorandum plaintiff directed its employees at its Palatine plant to check the returned plates against the debit memorandum to determine whether the deduction for defective goods shown on the check and the debit memorandum was just and whether the check should be accepted; and that its investigation was not completed until May 31, 1932, several days after the bank closed.

The face of defendant's check received in evidence is in the usual form, but there appeared on the back thereof the following:

"The endorsement of this check constitutes a receipt in full of the following invoices.

| Date | | Amount |
|---|---|---|
| April | Account | $2,798.31 |
| | Less 3150 #1802 | |
| | unpacked–$1.00 M | |
| | 3.15 | |

| | | |
|---|---|---|
| Less 2% Discount | $ 52.71 | |
| Less D/M 5/2 | 159.49 | |
| Total deductions | 215.35 | |
| Amt. of check | 2,582.96 | $2,798.31" |

Plaintiff contends that the provision of the Negotiable Instruments Act, Cahill's St. ch. 98, that a check must be presented for payment within a reasonable time after its issue can have no application to the instrument involved here; that the purported check was not a negotiable instrument within the contemplation of the act; and that it was not only conditional

but was conditionally delivered, and never accepted by plaintiff.

Defendant's theory is that plaintiff retained the check sent by it in payment of the merchandise an unreasonable length of time; that plaintiff's failure to present the check for payment within a reasonable time after its delivery, and before the bank was closed, discharged defendant thereon and constituted a payment of the goods to the extent of the loss caused by such unreasonable delay, which loss defendant claims is the entire amount of the check. ·

In our opinion the determination of the question as to whether the purported check is a negotiable instrument within the purview of the Negotiable Instruments Act is controlling in this cause. The sections of the act (Cahill's 1933 Ill. Rev. St. ch. 98) pertinent and material to this proceeding are as follows:

"Par. 21. (Section 1.) An instrument payable in money, to be negotiated, must conform to the following requirements:

. . .
"2. Must contain an unconditional promise or order to pay a sum certain in money.

"3. Must be payable on demand or at a fixed or determinable future time."

"Par. 24. (Section 4.) An instrument is payable at a determinable future time, within the meaning of this Act, which is expressed to be payable:

"1. At a fixed period after date or sight; or

"2. On or before a fixed or determinable future time specified therein; or

"3. On or at a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain.

"An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect."

"Par. 36. (Section 16.) Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, . . . the delivery, in order to be effectual, must be made either by or under the authority of the party making, . . . and in such case the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument. . . ."

"Par. 147. (Section 125.) A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand, or at a fixed or determinable future time, a sum certain in money to order or to bearer."

"Par. 206. (Section 184.) A check is a bill of exchange drawn on a bank payable on demand. . . ." Reading the last two paragraphs together, a check is defined as an unconditional order in writing drawn on a bank to pay on demand a certain sum in money to order or to bearer.

"Par. 207. (Section 185.) A check must be presented for payment within a reasonable time after its issue, *and notice of dishonor given to the drawer as provided for in the case of bills of exchange,* or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

That the trial court predicated his finding and judgment on the theory that the instrument in question was negotiable and conformed to the provisions of the act is evidenced by the following statement made in announcing his finding:

"I can't get away from the proposition that the plaintiff in this suit held this check an unreasonable length of time. I prefer to predicate my conclusion on that fact. There is no substantial evidence here, if there was it might change my opinion if the plaintiff

had brought in evidence here to show me that it required . . . twelve days, in order to ascertain whether or not this credit was correct, I might be inclined to hold with the plaintiff; but in my opinion the plaintiff held this check an unreasonable length of time.''

In order that an instrument shall be negotiable it must amount to an independent promise to pay, at all events at a certain time, to a definite person a definite amount of money without condition. The law is settled, not only in this State but in most jurisdictions, that in construing an instrument such as the one here any memorandum following the signature or on the back or margin thereof, placed there prior to or contemporaneously with its execution, must be treated as part of it the same as if it were in the body of the instrument. (*Costelo v. Crowell,* 127 Mass. 293; *Scholbe v. Schuchardt,* 292 Ill. 529; *Van Zandt v. Hopkins,* 151 Ill. 248.) The purport of the instrument is not only to be collected from its ''four corners,'' but from its ''eight corners,'' and a memorandum on the back affecting its operation must be regarded the same as if written on its face. (Daniels on Negotiable Instruments, vol. 1, sec. 166.) It is conceded that the statements and figures appearing on the back of defendant's check were there when it was signed. When defendant returned the merchandise to plaintiff's driver May 2, 1932, no itemization of the goods returned or statement of any claim in connection therewith was given to plaintiff or its driver. It was not until May 13th that the check for a reduced amount bearing on its back the legend ''the endorsement of this check constitutes a receipt in full of the following invoices,'' and the statement heretofore set forth as to the claimed deductions was received.

While it is a generally recognized rule that an instrument absolute on its face cannot be shown by parol to be conditional, yet evidence that the instru-

ment was not intended to take effect as a valid obligation until the occurrence of some future contingency is usually held admissible between the original parties. Such evidence, it is held, does not contradict the terms of the writing or vary its legal import but tends to show it was never delivered as a present contract, and the delivery upon condition does not make it operative until the condition has been complied with. (*Bell v. McDonald,* 308 Ill. 329.) In discussing this rule the following language was used in *Jordan v. Davis,* 108 Ill. 336:

"Delivery of a written contract is indispensable to its binding effect, and such delivery is not conclusively proved by showing the placing of the paper by the alleged contracting party in the hands of the other. Delivery is a question of intent, and it depends whether the parties, at the time, meant it to be a delivery to take effect presently." It conclusively appears in the instant case that the delivery of the check was not intended to take effect presently. Defendant created the situation that made the instrument payable contingently and its delivery conditional.

Defendant's bookkeeper testified, and it is undisputed, that the purpose of forwarding the itemized debit memorandum with the remittance was to have plaintiff check the goods returned as defective against it to ascertain if defendant's deductions from the amount of the invoices were correct. As was intended, plaintiff ordered an investigation of the returned plates immediately. It appeared from plaintiff's evidence that its plant at Palatine was being operated short-handed and its investigation progressed as employees could be spared from their regular duties; that when it was finished May 31, 1932, plaintiff insisted defendant was not entitled to the full allowance claimed; and that it withheld acceptance of the check pending the result of its inquiry. The bank had been

closed before plaintiff concluded its investigation and it was not until then that it was obliged to elect whether it would accept or repudiate the check. From the day it received the check until the bank was taken over by the State auditor, we are satisfied that its right to retain the check without presentment for payment was unquestionable.

We have heretofore set forth the sections of the Negotiable Instruments Act designating the essential elements of such instruments. We have also shown that under the recognized law of this State the memorandum on the back affecting the operation of defendant's check must be regarded as if written on its face. It is readily apparent that the check proffered did not conform to the requirements of sections 1, 4, 16 or 184 of the act. Inasmuch as defendant imposed the condition on the check that if accepted it must be as payment in full of the indebtedness, with the consequent allowance of the claimed deductions, the instrument was obviously not an unconditional order to pay.

Plaintiff was precluded from presently demanding the payment of the check unless it agreed to the conditions. It has been clearly shown that the check was not delivered to be presently effective, inasmuch as defendant intended that plaintiff should perform a collateral act in investigating the claim for the allowance before it was incumbent on it to either accept or repudiate the check. The proffer of the check resolved itself into nothing more than an offer to settle the account if plaintiff were willing to accede to the conditions attached to the offer. It has been expressly held that the payee of a check has no right to strike out or erase such conditions without authority of the maker, and if he does and cashes it he accepts the conditions and is bound to the same extent as if he had cashed it without striking them out. (*In re Estate of Cunningham,* 311 Ill. 311.) Plaintiff never accepted

the offer and no property was transferred by the instrument. In fact no contract on a negotiable instrument was entered into by the parties within the meaning of the statute. There was nothing more than a conditional delivery of the check and the conditions of the delivery were never complied with.

Although an essential requirement of a check under the act is that it must be payable on demand, the instrument here was shorn of that element by its delivery upon the contingency that after an investigation plaintiff might allow the deductions and accept the check as full payment. Neither can it be seriously urged that it was payable at a fixed or determinable future time. It might well have been anticipated that plaintiff's investigation of the returned goods would not justify the allowance of the deductions claimed on the check and that it would not be accepted at all. That, in fact, is exactly what happened.

The conclusion is inescapable that the remittance to plaintiff was neither a check nor a negotiable instrument of any kind within the contemplation of the act, and in our opinion plaintiff's contention that section 185, providing that "a check must be presented for payment within a reasonable time after its issue," applies only to checks within the meaning of the act and is not applicable to the instrument involved here is meritorious.

It is not contended by defendant that plaintiff ever accepted the check, but it does insist that the law will impute an intention to accept by reason of its retention for an unreasonable time without presentation for payment. It is sufficient answer to say that the circumstances under which it was retained fully justified plaintiff's action in that regard.

The cases cited by defendant are readily distinguishable from the case at bar and in none of them are the facts similar to the facts here. It cites *Seidman v.*

*Chicago Eye. Shield Co.,* 267 Ill. App. 77; *Day-Luell-witz Lumber Co. v. Serrell,* 177 Ill. App. 30; *Bloomquist v. Johnson,* 107 Ill. App. 154; *Kraetsch v. City of Chicago,* 198 Ill. App. 395; *Bicknell v. Knollin,* 207 Ill. App. 408; *Canton Union Coal Co. v. Parlin & Orendorff Co.,* 215 Ill. 244; and *Kilpatrick v. Home Bldg. & Loan Ass'n,* 119 Pa. St. 30, in support of its last mentioned contention.

In the *Seidman* case there was an express acceptance of the check coupled, however, with an attempt to repudiate the condition upon which it was given.

In the *Serrell* case it was not the debtor's check that was sent with the statement of account but the check of a third party, and the court specifically confined its holding to such remittances as a bank draft, a cashier's check or a check of some third person, and not that of the debtor when it said, at page 37:

"Therefore, while it may well be that some affirmative use of the debtor's check or draft may be necessary to bind the creditor, the mere neglect or refusal promptly to return the check of a third party, and thus place the debtor in *statu quo,* might with equal reason be held to foreclose such a creditor from subsequent action."

In the *Bloomquist* case, while the check was originally returned it was later taken back by the creditor. The court held that his unexplained retention of the check after taking it back constituted an express acceptance.

In the *Kraetsch* case a cashier's check was given in payment of a saloon license. After accepting the check it was held pending investigation of the application for the license. The bank on which it was drawn failed while it was being so held. This was a check of a third party and the court held that it had been expressly accepted by the city.

In the *Bicknell* case the check was actually cashed.

In the *Canton Coal Company* case the check was collected on the day of its receipt.

In the *Kilpatrick* case the check was expressly accepted by the building and loan association through its authorized officers and representatives.

None of these cases is applicable to the issue presented here. They all involved either express acceptances of the checks or the checks of third parties. No case has been cited, and we have found none, that holds that the mere retention of a conditional check conditionally delivered, pending an investigation of the account, amounted to an acceptance of the check.

The form of remittance was chosen by defendant. It imposed its own conditions on the instrument and intended to and did place on plaintiff the obligation of investigating the correctness of its claimed deductions. It alone is responsible for its present predicament. We are constrained to hold that the trial court erred in finding that the purported check was a negotiable instrument and, as such, subject to the provision that there was an unreasonable delay by plaintiff in presenting it for payment or repudiating it.

In its statement of claim plaintiff conceded that defendant's claim for the allowance of $3.15 appearing on the back of the check was correct, but asserted that as a result of its investigation defendant was entitled only to an allowance of $144.99 on the merchandise returned instead of $159.49 as claimed on the check and debit memorandum. We believe, however, from an examination of all the evidence, that defendant's right to the deduction of $159.49 for defective merchandise returned was established. It is immaterial as affecting the character of the check whether plaintiff's investigation disclosed that defendant's claimed deduction was correct or not. Its right under the law to make the investigation could not possibly be affected by the result of same. Although plaintiff alleged that

defendant was not entitled to the full deduction claimed, its evidence failed to substantiate that allegation.

If defendant's proffered check had been a valid negotiable instrument we would be disposed to hold that it was entitled to the $52.71 discount indicated on the check because of the agreement and course of dealing between the parties whereby on many former occasions the discount had been allowed on remittances received as late as the 14th of the month, but in view of the nature of its remittance it is not entitled to the discount at this time.

Many other points have been urged and argued, but in the view we take of this cause it is unnecessary to discuss them.

For the reasons indicated the judgment of the municipal court is reversed and judgment will be entered here in favor of plaintiff for $2,635.67.

*Reversed and judgment entered here with a finding of facts.*

GRIDLEY and SCANLAN, JJ., concur.

Finding of facts: We find as ultimate facts that plaintiff delivered $2,798.31 worth of merchandise to defendant during April, 1932; that defendant has paid nothing on account but is entitled to the following credits: $159.49 for defective merchandise it returned and for which it was entitled to an allowance; $3.15 which it had been overcharged; and that defendant is indebted to plaintiff in the net sum of $2,635.67.