Morris GOLDSTEIN, d/b/a DeReve & Company, Plaintiff-Appellant,

v.

STAINLESS PROCESSING COMPANY and David J. Fiterman, Defendants-Appellees.

No. 71–1247.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1972.

Decided July 6, 1972.

Ralph A. Mantynband, Kevin Sweeney, Chicago, Ill., for plaintiff-appellant.

Terence J. Anderson, Henry C. Krasnow, Chicago, Ill., for defendants-appellees.

Before KILEY, PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from a judgment entered following the direction of a verdict for the defendant (Stainless)[1] in a diversity action in which the plaintiff (Goldstein) sought to recover damages arising out of an alleged breach of contract for the delivery of nickel cathodes.

The parties were dealers in metals. Neither had dealt with the other prior to the transaction in question. The facts support the premise that neither reposed any confidence in the other.

As a result of telephonic conversations, Goldstein agreed to buy and Stainless agreed to sell 20,000 pounds of nickel cathodes at a price of $4.60 per pound, f. o. b., Chicago. During the conversations, Stainless had asked that some money be sent on account, which request Goldstein had declined. Variations on the request were proposed with equally negative responses. Finally, Stainless suggested that Goldstein send a $20,000 check which Stainless would hold in escrow.

Goldstein's version of the conversation, which we accept for the purposes of considering the propriety of directing a verdict, is that "he would do that provided that they would hold the check until the time he would come to Chicago to verify the material, then they would return the check to Goldstein at the time of delivery, and he would pay the entire amount due in full by a single certified check."

Stainless sent its confirmation of sale, dated August 27, 1969, which specified as "Terms" the following: "$20,000.00 deposit. Balance by certified check at time of pickup." No reference was made to any escrow arrangement.

On August 28, 1969, Goldstein, not yet having received the confirmation, sent a letter to Stainless confirming the telephone conversation of the previous day by outlining the terms and provisions of the oral agreement. The letter concluded as follows:

"We are enclosing our check in the amount of $20,000.00 as a good faith deposit. This check is to be held in escrow. When we get to Chicago and the entire shipment is weighed and verified, we will issue one check to cover the full amount.

"Please sign and return the enclosed copy of this letter for our files."

Stainless signed and returned to Goldstein a copy of this letter about September 5, 1969. However, prior to the 5th the following significant incidents occurred. On the same day that Goldstein mailed the "good faith deposit" check he went to his bank and stopped payment on it. This apparently had no connection with an insufficiency of funds as his bank balance showed substantially

1. By stipulation, a dismissal was entered as to the individual defendant, Fiterman, just prior to trial.

more than the amount of the check. Further, Stainless unaware of the stop payment order, upon receipt of the check went to its bank and deposited the "in escrow" check in its account.

On September 2, 1969, Goldstein wrote Stainless in part as follows:

"We acknowledge receipt of your sales Contract No. 2633 and note that it varies slightly from our understanding as stated in our contract letter of August 28, 1969; namely, you mentioned on the telephone that you would like to have a $20,000.00 check to be held in escrow. We have sent you this check." (Underlining emphasis in original.)

The check travelled in banking channels without incident until its confrontation with the stop payment order. Upon its arrival back at its point of embarkation, or shortly thereafter, a telegram was dispatched by Stainless to Goldstein as follows:

"THIS IS TO ADVISE THAT WE ARE CANCELLING HEREWITH OUR SALES ORDER 1633 FOR 10,000 DEPOSIT AND FAILURE TO ACKNOWLEDGE OUR SALES CONFIRMATION. YOUR CHECK WILL BE RETURNED PROMPTLY."

The telegram followed by two days another Goldstein letter of September 10 to Stainless which referred to the acceptance of the September 2 [escrow] amendment and to a conversation of the 10th extending delivery date from September 15 to the 25th. In the correspondence to the time of this letter, Goldstein had refrained from mentioning that he had stopped payment and Stainless likewise failed to mention that it had attempted to reduce the check to cash.

Stainless in subsequent correspondence declined to elaborate on its telegram as to its reasons for cancellation.

The only remaining fact of significance, and which probably is not of surprise status, is that the market price of nickel cathodes had risen by September 16 from $4.60 to $5.75 per pound. Goldstein purchased the metal elsewhere and sought to recover the resultant $23,000 additional sum he was required to pay.

At the conclusion of the plaintiff's evidence, the motion for directed verdict was sustained and this appeal followed.

While some fringe issues are asserted, the basic issue is correctly phrased by Goldstein, "[i]f Goldstein's stop payment order was a material breach sufficient to justify cancellation of the contract, then the verdict in the trial court should be sustained."

■ In our opinion, the question posed may be answered quite simply. Stainless bargained for and had every right to expect that it would receive a valid check. The check at the time of receipt was not valid as it was subject to a stop payment order. Stainless did not get what it bargained for and had a right to expect. It, therefore, under the Uniform Commercial Code as adopted in Illinois had the right to cancel the contract. Ill.Rev.Stat. ch. 26, §§ 2–610, 2–703.

The fact that it might well not have chosen to do so if the price of the metal had gone down instead of up is immaterial.

What is material is that if the price had gone down, the holding of a valid check would have been salutary in its ability to aid Stainless in any attempt it might make to hold Goldstein to his bargain.

Nor do we attach significance to the fact that Stainless may have had other remedies under the Uniform Commercial Code. The remedy chosen was cancellation.

We do not condone the action of Stainless in attempting to cash the check but we do not find that Goldstein is in a position in the present action for breach of contract to assert lack of clean hands. Further, while Stainless did violate what appears to be its clear obligation to con-

tinue to hold the check,[2] we do note that if the check had cleared, Goldstein would certainly have been in a position to hold Stainless to its contract or in the alternative to recover his damages.

Goldstein did not argue what seems to be established law in the field of contracts that one cannot cancel a contract if in default oneself at the time of the purported cancellation. *See* Atwell Ptg. & Binding Co. v. Prairie Farmer Pub. Co., 246 Ill.App. 100, 115 (1927). *See also,* 17A C.J.S. Contracts § 295 (1963). If this point had been urged, we would agree with the *Atwell* court that what Stainless did here was not substantial enough a default to bar it from exercising its right of cancellation. Depositing the check, while in violation of Stainless' obligation to hold it until the closing, did not place it in a position of not being able to perform its contract to deliver the metal and the amount of the check would have had to have been credited on the purchase price. While this point may properly be considered as having been waived, we have considered it in the context of the fact that a directed verdict was granted.

We do not agree with Stainless to the extent it argues that the agreement could be construed to mean that it was to hold a $20,000 deposit. Goldstein had rejected this possibility.

Goldstein also complains that Stainless did not advise him of its true reason for cancellation, suggesting apparently that the true reason was the rise in the market price of the metal and that the stop payment was in the nature of an afterthought excuse. Whatever semantic description is used, Stainless was possessed of a valid basis for cancellation and did cancel.

We also note that the telegram of cancellation is somewhat ambiguous as to specification of reasons, stating in part ". . . 10,000 deposit and failure to acknowledge. . . ." There was no "10,000" involved in this transaction but there was a deposit which was apparently the real basis of the action. Nevertheless, since the case before us involves the granting of a motion for directed verdict, we are assuming for the present purposes that Stainless did not specify to Goldstein the stop payment order as its justification.

Stainless unequivocally notified Goldstein it was cancelling, and whether he knew or not that Stainless was aware of his having stopped payment, he did have knowledge that in fact he had done so. The significant factor here is the actual cancellation and notice thereof and not the motivation where grounds for cancellation existed. *See* Ladd v. Foster Inv. Co., 40 F.2d 497 (10th Cir. 1930).

The conduct of neither party was such as to reflect much credit on the marketplace and without much doubt each was playing games with the other. We leave them where they are.

For the reasons set forth herein the judgment is affirmed.

Affirmed.

2. Technically it appears questionable whether Stainless could have held the check "in escrow" not being a stranger to the transaction. *See* Kraetsch v. City of Chicago, 198 Ill.App. 395, 404 (1916).

Nevertheless, it seems clear that the contemplation of the parties was that the check would be held, not deposited in a bank account.